Affirmed by published per curiam opinion, in which Chief Judge WILKINSON, Judge WIDENER, Judge WILKINS, Judge . NIEMEYER, Judge HAMILTON, Judge LUTTIG, Judge WILLIAMS, and Senior Judge HALL joined. Judge ERVIN wrote a dissenting opinion, in which Judge MURNAGHAN, Judge MICHAEL, and Judge MOTZ joined.
OPINION
PER CURIAM.
Obiora E. Egbuna brought this employment discrimination action against his former employer, Time-Life Libraries Inc. (“TLLI”), alleging that TLLI refused to rehire him in retaliation for his having participated in another employee’s discrimination suit against TLLI. The district court granted summary judgment to TLLI finding that Eg-buna had not established a prima facie case of employment discrimination. A panel of our circuit reversed the district court’s ruling. Before the case was remanded to the district court, however, a majority of this court granted a rehearing en banc. This decision follows.
I.
■ TLLI hired Egbuna, a Nigerian national, in June 1989. When TLLI hired Egbuna, he possessed a valid student work visa issued by the Immigration and Naturalization Service (“INS”). Although Egbuna’s work visa expired six months after he was hired, TLLI apparently failed to note that it had expired, and Egbuna continued to work for TLLI until April 1993.[1]
During Egbunp’s employment with TLLI, a subordinate of Egbuna, Harrison Jackson, told Egbuna that he had been sexually harassed by a supervisory employee. Egbuna failed to report these complaints to higher management, or to TLLI’s Human Resources Department, in violation of company policy. But when TLLI investigated Jackson’s allegations, after Jackson filed a charge of discrimination against TLLI with the Equal Employment Opportunity Council alleging that he had been the victim of unlawful sexual harassment in the workplace, Egbuna corroborated many of Jackson’s allegations.
In April 1993, Egbuna voluntarily resigned from TLLI because he intended to return to Nigeria. When his plans changed, he approached TLLI in June 1993 about reemployment. At that time, Egbuna was still *186 unauthorized to work in the United States, because he had never attempted to renew his visa.[2] On the twenty-first of July, TLLI informed Egbuna that he would not be hired.
Contending that TLLI had extended him an employment offer on July nineteenth and withdrew the offer on the twenty-first because Egbuna had corroborated many of Jackson’s allegations of sexual harassment, Egbuna sued TLLI for violating section 704(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a). Section 2000e-3 provides that discrimination by an employer against an employee or applicant for employment who has participated in a Title VII investigation, proceeding, or hearing constitutes an unlawful employment practice.
TLLI moved for summary judgment on the grounds that it never made Egbuna an offer on July 19, 1993, and that even if TLLI had extended an offer to Egbuna, TLLI could not have employed him because of his undocumented alien status. The district court granted TLLI’s motion. Relying on McDonnell Douglas Corp. v. Green,[3] the district court found that Egbuna could not demonstrate that he was a victim of discrimination, because at the time he sought employment, Egbuna was unqualified for the position he sought by virtue of his failure to possess legal documentation authorizing him (an alien) to work in the United States.[4]
II.
We review the grant of summary judgment de novo.[5] TLLI is entitled to summary judgment if there is no genuine issue of material fact for trial and TLLI is entitled to summary judgment as a matter of law.[6]To be successful in its motion for summary judgment, TLLI must show the absence of evidence to support Egbuna’s case.[7] Conversely, to defeat TLLI’s motion, Egbuna must demonstrate the existence of a genuine trial issue of fact without relying upon mere allegations or denials of his pleading.[8] We may affirm the grant of summary judgment on grounds other than those relied upon by the district court.[9]
Allegedly TLLI offered Egbuna a job in July 1993 and then rescinded its offer two days later because Egbuna had participated in Jackson’s suit against TLLI.[10] Egbuna maintains these facts present a classic case of retaliation. We find, however, that Egbuna has no cause of action because his undocumented status rendered him ineligible both for the remedies he seeks and for employment within the United States.
Pursuant to Title VII, a plaintiff may seek equitable remedies from the courts for the discriminatory employment practices of an employer.[11]The remedies include the hiring of the applicant, reinstatement, back pay, and injunctions against further violations.[12] The goal of awarding these equitable remedies is to make the complainant whole without imposing large monetary penalties upon the *187 employer.[13]
A plaintiff is entitled to the above remedies only upon a successful showing that the applicant was qualified for employment. When the applicant is an alien, being “qualified” for the position is not determined by the applicant’s capacity to perform the job — rather, it is determined by whether the applicant was an alien authorized for employment in the United States at the time in question. Congress so declared in the Immigration Reform and Control Act of 1986 (“IRCA”), which was enacted to reduce the influx of illegal immigrants into the United States by eliminating the job magnet.[14] IRCA declares it unlawful for employers to employ, recruit, or refer for a fee all unauthorized aliens.[15] IRCA identifies unauthorized aliens as those individuals who at the particular time relating to employment are aliens neither lawfully admitted for permanent residence, nor authorized to be so employed by IRCA or by the Attorney General.[16]
To ensure, therefore, that employers do not hire unauthorized aliens, IRCA mandates that employers verify the identity and eligibility to work of each new-hire by examining specified documents before they begin work.[17] If an alien applicant is unable to present the required documentation, the unauthorized alien cannot be hired.[18] Similarly, if an employer unknowingly hires an unauthorized alien, or if the alien becomes unauthorized while employed, the employer is compelled to discharge the worker upon discovery of the worker’s undocumented status.[19] IRCA specifically states:
It is unlawful for a person or other entity, after hiring an alien for employment in accordance with paragraph (1), to continue to employ the alien in the United States knowing the alien is (or has become) an unauthorized alien with respect to such employment.[20]
Employers who violate IRCA are punished not only by a series of civil fines,[21] but are also subject, to criminal penalties of up to $3,000 for each unauthorized alien so employed, and/or imprisonment for not more than six months for a pattern or practice of such violations.[22] IRCA thus statutorily disqualifies any undocumented alien from being employed as a matter of law. . -
Regardless of the fact that IRCA proscribes the relationship between an unauthorized alien and an employer, Egbuna cites Sure-Tan, Inc. v. NLRB,[23] to support his contention that Title VII protects unauthorized aliens from employment discrimination occurring during the hiring process. Sure-Tan, a National Labor Relations Act (“NLRA”) case which extended NLRA protection to illegal alien employees, is inapplicable to the case at hand for three reasons. First, Sure-Tan, is not a case in which the alleged discrimination occurs during the hiring process. The unauthorized aliens in Sure-Tan experienced discrimination after they were hired and while they were employees of Sure-Tan. Second, Sure-Tan is a pre-IRCA case which reasons that because “the employment relationship between an employer and an undocumented alien is ... not illegal under the [Immigration and Nationality Act (“INA”) ], there is no reason to conclude that application of the. NLRA to employment practices affecting such aliens would necessarily conflict with the terms of *188 the INA.”[24] Third, IRCA effected a monumental change in our country’s immigration policy by criminalizing the hiring of unauthorized aliens.
Given Congress’ unequivocal declaration that it is illegal to hire unauthorized aliens and its mandate that employers immediately discharge unauthorized aliens upon discovering their undocumented status, we cannot reverse the district court’s grant of summary judgment in favor of TLLI. To do so would sanction the formation of a statutorily declared illegal relationship, expose TLLI to civil and criminal penalties, and illogically create an entitlement simply because Egbuna applied for a job despite his illegal presence in this country and despite his having been statutorily disqualified from employment in the United States. In this instance, to rule Egbuna was entitled to the position he sought and to order TLLI to hire an undocumented alien would nullify IRCA, which declares it illegal to hire or to continue to employ unauthorized aliens.
III.
For the foregoing reasons, we affirm the district court’s grant of summary judgment.

AFFIRMED.

. The record reveals that TLLI’s hiring policy was to refuse uniformly to hire prospective alien employees who fail to produce valid identification and proof of authorization for employment.

. Egbuna's deposition reveals that he never attempted to renew his visa because he feared deportation and did not want to alert the authorities of his illegal immigration status.

. 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

. Egbuna was eventually granted temporary work authorization in January 1994, in connection with his application for political asylum. Thus, from December 1989 through January 1994, Egbuna was unemployable in the United States.

. Nguyen v. CNA Corp., 44 F.3d 234, 236 (4th Cir.1995).

. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir.1994).

. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). See also Shaw, 13 F.3d at 798 ("A mere scintilla of evidence supporting the case is insufficient.”).

. Keller v. Prince George’s County, 923 F.2d 30, 32 (4th Cir.1991).

. Conspicuously, the individual who allegedly made the offer and revocation of employment, and who indicated TLLI did not hire Egbuna for retaliatory reasons, was neither deposed by Eg-buna nor named on his witness lists.

. 42 U.S.C.A. § 2000e-5(g) (1994).

. Id.

. Albemarle Paper Co. v. Moody, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) (Title VII remedies serve to restore the complainant to the position he would have been in absent the discrimination).

. Statement by President Ronald Reagan Upon Signing S. 1200, 22 Weekly Comp.Pres.Doc. 1534, (Nov. 10, 1986).

. 8 U.S.C.A. § 1324a (West Supp.1997).

. Id. § 1324a(h)(3).

. Id. § 1324a(b).

. Id. § 1324a(a)(1).

. Id. § 1324a(a)(2).

. Id.

. Id. § 1324a(e)(4).

. Id. § 1324a(f)(1).

. 467 U.S. 883, 104 S.Ct. 2803, 81 L.Ed.2d 732 (1984).

. Id. at 893, 104 S.Ct. 2803.