Filed: March 23, 1999

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 98-1033
(CA-96-201-A)

Omega World Travel, Incorporated,

Plaintiff - Appellant,

versus

Airlines Reporting Corporation,

Defendant - Appellee.

O R D E R

The court amends its opinion filed February 3, 1999, as follows:

On the cover sheet, section 2 -- the caption is amended to read "Omega World Travel, Incorporated/Plaintiff-Appellant, versus Airlines Reporting Corporation/Defendant-Appellee, and Trans World Airlines/Defendant."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

OMEGA WORLD TRAVEL,
INCORPORATED,
<u>Plaintiff-Appellant,</u>

v.                                                                  No. 98-1033

AIRLINES REPORTING CORPORATION,
<u>Defendants-Appellees,</u>

and

TRANS WORLD AIRLINES,

<u>Defendant.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Senior District Judge.
(CA-96-201-A)

Argued: October 30, 1998

Decided: February 3, 1999

Before LUTTIG, Circuit Judge, BUTZNER, Senior Circuit Judge,
and THORNBURG, United States District Judge for the
Western District of North Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Barry Roberts, ROBERTS & HUNDERTMARK, L.L.P.,
Chevy Chase, Maryland, for Appellant. Thomas Francis Cullen, Jr.,
JONES, DAY, REAVIS & POGUE, Washington, D.C., for Appel-
lees. **ON BRIEF:** Mark Pestronk, Fairfax, Virginia, for Appellant.

Kevin D. McDonald, Edwin L. Fountain, Sarah D. Mackey, JONES, DAY, REAVIS & POGUE, Washington, D.C., for Appellee Airlines Reporting. Charles E. Bachman, O'SULLIVAN, GRAEV & KARABELL, L.L.P., New York, New York; R. Hewitt Pate, Sarah C. Johnson, HUNTON & WILLIAMS, Richmond, Virginia, for Appellee TWA.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Omega World Travel, Inc. (Omega) appeals the district court's grant of summary judgment to Airlines Reporting Corporation (ARC).

After the deregulation of air fares by the Civil Aeronautics Board in 1978, use of travel agencies significantly increased. As airline fare structures became more complex, travel agents became more useful. Agency growth was spurred by an increase in commissions. ARC was formed and continues to be owned by the major airlines in the United States. Its purpose is to act as a clearinghouse through which airlines and travel agents deal with each other. It provides three services to its members: agency accreditation, the provision of common ticket stock, and a centralized reporting system through which the agencies report and settle their accounts with the airlines.

Omega, which has over 200 locations, is one of the largest travel agencies in the United States. In 1996, Omega sued ARC claiming it had entered into a conspiracy with the airlines to control the market for the sale of airline tickets in violation of federal antitrust laws. The district court found Omega had failed to produce sufficient evidence to show the existence of a conspiracy and granted ARC's motion for summary judgment. We review a district court's grant of summary

judgment de novo. Egbuna v. Time-Life Libraries, Inc., 153 F.3d 184 (4th Cir. 1998).

"[O]n summary judgment motions in antitrust cases, the Supreme Court has instructed that when there is evidence of conduct that is consistent with both legitimate competition and an illegal conspiracy, courts may not infer that an illegal conspiracy has occurred without other evidence." Thompson Everett, Inc. v. National Cable Advertising, 57 F.3d 1317, 1323 (4th Cir. 1995) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986)). Section 1 of the Sherman Antitrust Act provides that"[e]very contract ... or conspiracy, in restraint of trade or commerce among the several states ... is declared to be illegal." 15 U.S.C. § 1. To prove a violation of this statute, appellant must establish, first, that there are at least two persons acting in concert and second, that the restraint complained of constitutes an unreasonable restraint on interstate trade or commerce. Estate Construction Co. v. Miller & Smith Holding Co., Inc., 14 F.3d 213, 220 (4th Cir. 1994). Considering the first element, "[p]roof of concerted action requires evidence of a relationship between at least two legally distinct persons or entities." Oksanen v. Page Memorial Hospital, 945 F.2d 696, 702 (4th Cir. 1991), cert. denied, 502 U.S. 1074 (1992). "[I]t is not enough merely to state that a conspiracy has taken place." Estate Construction, 14 F.3d at 221. The appellant must show details of the time, place and effect of the conspiracy. Id.

In support of summary judgment, ARC produced substantial evidence that travel agencies elect to use the ARC system, instead of dealing individually with the airlines, because it is more efficient and financially advantageous.* For example, ARC accreditation is provided when an agency has met a common set of standards for all participating airlines. This eliminates the need for an agency to obtain accreditation from each airline, a process requiring the agency to meet each airline's unique standards. Travel agents testified this accreditation makes it easier to open agencies and to remain in business. It also provides each agent member with enhanced information concerning rates and routes. As part of the accreditation process, each agency posts a bond with ARC insuring the traveler is protected in the event

_____

* The relationship between ARC and its member agencies is reduced to contract form in the ARC Agent Reporting Agreement.

3

of the agency's bankruptcy. This has increased consumer confidence in the use of travel agencies. And, while any travel agency may apply for ARC accreditation, no agency must be ARC accredited to do business with the airlines. Omega is ARC accredited but also has a contract outside the ARC system with Southwest Airlines.

Accredited agencies receive blank ticket stock used to write tickets for travel on member airlines. This stock is uniform throughout the member agencies and airlines, thus enhancing security. In addition, the use of common stock allows an agent to sell and write an airline ticket for an airline with which it does not normally deal, eliminating a separate negotiation process. And, because common stock is in essence the currency used by ARC and airlines, small agencies are better able to compete with larger ones.

When an accredited agency issues a ticket, it collects either cash or credit for payment and holds the money for the carrier until it submits its sales report and remits the proceeds, less its commissions. Under the terms of the ARC Agent Reporting Agreement, every ten days the agency must file a sales report and remit the proceeds. The advantage to the ARC member agency is that, regardless of the number of airlines to whom tickets have been sold, only one report need be filed. Nonetheless, an accredited agency has the right under the Agent Reporting Agreement to negotiate an alternate remittance plan with ARC. For example, Omega contracted with United Airlines for an alternate remittance plan of eight days.

In opposition to the motion, Omega argued that the ARC Agent Reporting Agreement is the product of joint action by ARC and the airlines to suppress competition. Omega claimed there is an industry-wide agreement to use ARC and, thus, a conspiracy to restrain competition. Moreover, according to Omega, the airlines control the contractual relationship between ARC and its members; the travel agencies have no choice if they want to do business. Omega argues on appeal without citing any evidence that in order to issue airline tickets in the United States, a travel agency must be ARC accredited, and that ARC's rules restricting the use of ticketing machines to specified locations impedes competition. The contractual requirement for the payment of annual fees to ARC for its services and the posting of bonds are also cited as restraints on competition. And, if an agency

4

fails to remit its proceeds in a timely manner, it is subject to sanctions. However, none of these examples shows the details, time and place of a conspiracy. These arguments go to the second element necessary to show Section 1 violations, i.e., whether there is an unreasonable restraint on trade. Without the existence of a conspiracy, these factors show nothing more than the agencies' determinations to enter into yearly contractual relationships with ARC.

To support its theory, Omega presented the testimony of Michael Premo, Chief Executive Officer of SatoTravel, an organization in existence since 1985 which also operates as a clearinghouse for airlines and travel agents. In fact, like ARC, its stock is owned by "shareholder airlines." Premo testified that SatoTravel operates in much the same manner as ARC, even using the same processing center as ARC. Omega's argument is that SatoTravel does not act as an "enforcer" as does ARC and claims, again without citing any evidence of record, that this allows each member agency to deal directly with the airline. The fact that SatoTravel is a competing clearinghouse organization operating virtually identically to ARC is not evidence of a conspiracy but indeed evidence to the contrary.

Omega also argues that although the ARC Agent Report Agreement contains a provision for alternate remittance plans, no agent has been able to negotiate such an arrangement with a carrier. The agreement between Southwest and Omega is described as an arrangement for ticket-less transactions which does not require any remittance to the carrier because the traveler picks up the ticket at the airport. As aptly noted by the court below, "[w]hile Omega hypothetically might be able to produce some evidence that the airlines and ARC conspire to foreclose alternatives to the ARC, they have not done so."

Omega has presented only argument and speculation, most often directed at the existence of an unreasonable restraint on trade. No details of the time, place and effect of the conspiracy have been presented. No evidence has been presented showing communications, meetings or other methods through which a knowing participation in a scheme might be inferred. Estate Const. Co., 14 F.3d at 221. In short, Appellant's case is based on hypotheticals and inference. And, although permissible inferences from the facts should be drawn in the light most favorable to the non-moving party, those inferences must

5

"fall within the range of reasonable probability and may not be so tenuous as to amount to speculation or conjecture." Thompson Everett, Inc., 57 F.3d at 1323. Omega has failed to present any evidence other than that the agents elect to become ARC members because of mutually beneficial results. "That the challenged conduct ... is consistent with legitimate activities also weighs against inferring a conspiracy." Oksanen, 945 F.2d at 706.

Although Omega raises other issues on appeal, they need not be addressed since it has failed to show the first element necessary for a violation of § 1 of the Sherman Act.

The judgment of the district court is

AFFIRMED.

6