**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                              )
JUOCHI IWEALA,                )
                              )
     Plaintiff,               )
                              )
     v.                       )  Civil Action No. 04-2067 (RWR)
                              )
OPERATIONAL TECHNOLOGIES      )
SERVICES, INC.,               )
                              )
     Defendant.               )
_____)
```

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Juochi Iweala, a black female from Nigeria who was pregnant twice while employed by defendant Operational Technologies Services, Inc. ("OTS") brings this action under Title VII, 42 U.S.C. § 2000e <u>et seq.</u>, and 42 U.S.C. § 1981, alleging that OTS discriminated against her because of her race, national origin, and pregnancies. After the close of discovery, OTS moved for summary judgment. Because Iweala failed to exhaust her administrative remedies under Title VII with respect to claims challenging discrete acts alleged to have occurred more than 300 days before she filed her administrative charge, summary judgment will be granted for the defendant with respect to such untimely claims. Because Iweala may bring her claims regardless of her visa status during her employment with OTS and because Iweala has created genuine factual disputes with respect to her timely disparate treatment, retaliation, and hostile work

environment claims, the defendant's motion for summary judgment will be denied in all other respects.

## BACKGROUND

Iweala, who worked for OTS as a Computer Systems Analyst/Programmer from 2001 until she was terminated on March 5, 2003, brings her amended complaint under Title VII and § 1981, alleging claims of disparate treatment, retaliation, and hostile work environment. She alleges that among other allegedly discriminatory actions, her supervisors excluded her from meetings, placed her on the bottom of every leader chart for assignments, reprimanded her when other similarly-situated individuals were treated more favorably, treated her rudely, subjected her to profanity, removed her from service on OTS' help desk, and ultimately terminated her because of her race, national origin, and pregnancy status. (Am Compl. ¶¶ 32-35; 38-51.) In addition, Iweala contends that she experienced retaliation after she repeatedly complained to her direct supervisors and other OTS management about her discriminatory treatment. (Id. ¶¶ 62-64.)

OTS has moved for summary judgment contending that Iweala is precluded from bringing her claims under Title VII and § 1981 because Iweala's immigration status made her ineligible for employment while she was employed at OTS. In the alternative, OTS argues that to the extent Iweala's visa status does not preclude her claims, Iweala has not raised a genuine dispute of

material fact and OTS is entitled to judgment as a matter of law with respect to all claims.

## DISCUSSION

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute about a material fact is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Facts in dispute are material if they are capable of affecting the outcome of the suit under governing law. Id. In considering a motion for summary judgment, a court must view all evidence and inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

I.   IWEALA'S VISA STATUS

OTS first argues that Iweala has no standing to bring her claims under Title VII or § 1981 because her visa status made her employment with OTS unlawful. (Def.'s Mem. in Support of its Mot. For Summ. J. ("Def.'s Mem.") at 8.) OTS relies on a line of cases from the Fourth Circuit: Egbuna v. Time-Life Libraries,

Inc., 153 F.3d 184 (4th Cir. 1998), cert. denied, 525 U.S. 1142 (1999), Chaudhry v. Mobile Oil Corp., 186 F.3d 502 (4th Cir. 1999), and Reyes-Gaona v. N.C. Growers Ass'n, 250 F.3d 861 (4th Cir. 2001).  In Egbuna, the Fourth Circuit held that a plaintiff is entitled to remedies under Title VII "only upon a successful showing that the applicant was qualified for employment."  153 F.3d at 187.  Egbuna explained that when a job "applicant is an alien, being 'qualified' for the position is not determined by the applicant's capacity to perform the job -- rather, it is determined by whether the applicant was an alien authorized for employment in the United States at the time in question."  Id. The Fourth Circuit reaffirmed its position the following year in Chauhdry, stating that a "foreign national is qualified for employment," and therefore entitled to Title VII protection, "if 'the applicant was an alien authorized for employment in the United States at the time in question.'"  186 F.3d at 504 (quoting Egbuna, 153 F.3d at 187).

In addition, OTS also argues that Iweala's claims should be barred under the reasoning of the Supreme Court's decision in Hoffman Plastic Compounds, Inc. v. NLRB, 535 U.S. 137 (2002).  In Hoffman, an employer challenged the NLRB's decision to award backpay to undocumented foreign nationals under the National Labor Relations Act.  Hoffman held that the Immigration Reform and Control Act ("IRCA") of 1986 precluded the NLRB from awarding

backpay to undocumented foreign nationals because awarding backpay to them "would unduly trench upon explicit statutory prohibitions critical to federal immigration policy . . . [and] encourage the successful evasion of apprehension by immigration authorities, condone prior violations of the immigration laws, and encourage future violations." 535 U.S. at 151. Nonetheless, in rejecting the backpay award, the Court noted that their decision did "not mean that the employer [got] off scot-free" because the Board had "already imposed other significant sanctions." Id. at 152.

In contrast to the Fourth Circuit's rule, in Rivera v. NIBCO, Inc., 364 F.3d 1057 (11th Cir. 2004), the Eleventh Circuit concluded that the protections of Title VII do apply to undocumented foreign nationals. In Rivera, the plaintiffs, employees of defendant NIBCO, Inc., alleged claims of employment discrimination based on national origin under Title VII. Id. at 1061. NIBCO filed an interlocutory appeal challenging a protective order barring it "from using the discovery process to inquire into the plaintiffs' immigration status and eligibility for employment." Id. Although NIBCO conceded that Title VII applies to undocumented foreign nationals, the Eleventh Circuit, in recognizing NIBCO's concession, explained that NIBCO's concession was "consistent with what [they had] long assumed to be the law of [that] circuit." 364 F.3d at 1064 n.4 (citing EEOC

v. <u>Hacienda Hotel</u>, 881 F.2d 1054, 1517 n.10 (9th Cir. 1989)). The Eleventh Circuit also questioned whether <u>Hoffman's</u> limitation on backpay under the NLRA should be extended to bar backpay awards under Title VII, noting the differences between scope of private actions and remedies available under each statute. <u>See</u> <u>id.</u> at 1066-70. Ultimately, it determined that it "need not decide the <u>Hoffman</u> question" at that time because the question of whether undocumented foreign nationals are entitled to backpay "'goes to the issue of damages, not liability.'" <u>Id.</u> at 1069 (quoting <u>Hashimoto v. Dalton</u>, 118 F.3d 671, 676 (9th Cir. 1997)).

Moreover, in <u>Agri Processor Co., Inc. v. NLRB</u>, 514 F.3d 1 (D.C. Cir. 2008), the D.C. Circuit considered whether after IRCA and <u>Hoffman</u>, undocumented workers are employees covered under the NLRA's definition of employee. The court of appeals found that "nothing in IRCA's text alter[ed] the NLRA's [expansive] definition of 'employee,'"[1] which had been previously interpreted

---

[1]Under the NLRA,
[t]he term "employee" shall include any employee, and shall not be limited to the employees of a particular employer, unless th[e] subchapter explicitly states otherwise, and shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment, but shall not include any individual employed as an agricultural laborer, or in the domestic service of any family or person at his home, or any individual employed by his parent or spouse, or any individual having the status of an independent contractor, or any individual employed as a supervisor, or any individual

to include undocumented workers.  Agri Processor Co., 514 F.3d at 4.  Thus, applying the rule that "'where two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective[,]'" the court of appeals found that undocumented foreign workers were covered under the NLRA's definition of employee.  Id. at 4-5 (quoting Ruckelshaus v. Monsanto, 467 U.S. 986, 1018 (1984)) (internal quotation marks omitted).  The court expressly rejected the argument that the Supreme Court's decision in Hoffman excluded undocumented foreign workers from protection under the NLRA, noting that the Supreme Court's decision in Hoffman "addressed only what remedies the NLRB may grant undocumented aliens when employers violate their rights under the NLRA," and the Court "explicitly declined to revisit [its previous] holding that undocumented aliens are employees under the NLRA."  Id. at 7.

Like the NLRA's definition of employee, Title VII's definition of employee broadly states that "[t]he term 'employee' means an individual employed by an employer," except for a few narrow exceptions not applicable in this case.  42 U.S.C. § 2000e(f).  Thus, Title VII, by its sweeping language, would

---

employed by an employer subject to the Railway Labor Act, as amended from time to time, or by any other person who is not an employer as herein defined.
29 U.S.C. § 152(3).

seem to encompass all employees regardless of immigration and visa status. Similarly, § 1981 affords "all persons within the jurisdiction of the United States" the right "to make and enforce contracts." 42 U.S.C. § 1981. OTS identifies no congressional action clearly intending to limit the scope of these broad statutes to exclude foreign nationals without proper work authorizations. Following the reasoning of Agri Processor, because neither Title VII nor IRCA clearly expresses Congress's intent to exclude foreign nationals without proper work visas from Title VII's coverage, Iweala's visa status and eligibility for employment with OTS should not preclude her from protection under Title VII, although her visa status and eligibility for employment may limit her remedies. It is enough at this stage to conclude that Iweala's claims may proceed regardless of whether her visa status made her employment with OTS unlawful, and it is unnecessary to sort out what remedies may or may not be available to her before any liability has been conclusively determined.

II. EXHAUSTION

OTS argues that it is entitled to judgment on all of Iweala's claims arising from adverse actions occurring more than 300 days before Iweala filed her charge with the EEOC. In her opposition to OTS' motion, Iweala does not respond to this argument. "'It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing

only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.'"  Peter B. v. CIA, Civil Action No. 06-1652 (RWR), 2009 WL 1529211, at *5 (D.D.C. June 1, 2009) (quoting Hopkins v. Women's Div., Gen. Bd. of Global Ministries, 238 F. Supp. 2d 174, 178 (D.D.C. 2002)).  Thus, Iweala has conceded that any Title VII claims arising from adverse actions occurring more than 300 days before April 21, 2003 -- the date she filed her administrative charge -- are barred and summary judgment will be granted for OTS with respect to any Title VII claim based upon an adverse action that occurred more than 300 days before Iweala filed her EEOC complaint.

III. DISPARATE TREATMENT

Claims of disparate treatment under Title VII are analyzed under the familiar burden-shifting framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  The same framework applies to § 1981 claims.  See Carney v. Am. Univ., 151 F.3d 1090, 1092-93 (D.C. Cir. 1998) (explaining that "[i]n order to evaluate claims under 42 U.S.C. § 1981, . . . courts use the three-step McDonnell Douglas framework for establishing racial discrimination under Title VII"); Prince v. Rice, 453 F. Supp. 2d 14, 21 (D.D.C. 2006).  At the summary judgment stage, a plaintiff carries the initial burden to establish a prima facie case of discrimination.  McDonnell Douglas, 411 U.S. at 802.  To

establish a prima facie discrimination case, the plaintiff must show that "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." Vickers v. Powell, 493 F.3d 186, 194 (D.C. Cir. 2007) (internal quotations and citations omitted). Establishing a prima facie case "in effect creates a presumption that the employer unlawfully discriminated against the employee." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981). If the plaintiff meets the burden of establishing a prima facie case, the burden shifts from the plaintiff-employee to the defendant-employer, who must then rebut the presumption of discrimination by producing admissible evidence showing a legitimate, nondiscriminatory reason for the adverse action taken against the employee. Burdine, 450 U.S. at 255-56; McDonnell Douglas, 411 U.S. at 802. Once the employer carries his burden, the presumption raised by the prima facie case vanishes and the employee then bears the burden of proving discrimination by showing that the defendant's nondiscriminatory reason was pretextual and "that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin[.]" See Brady v. Office of the Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008).

The court of appeals has explained that "'the prima facie case is a largely unnecessary sideshow'" once an employer asserts a legitimate, nondiscriminatory reason for an adverse employment action. Adeyemi v. District of Columbia, 525 F.3d 1222, 1226 (D.C. Cir. 2008) (quoting Brady, 520 F.3d at 494). If an employer has offered a legitimate, nondiscriminatory reason for the alleged adverse action taken, "the district court must conduct one central inquiry in considering an employer's motion for summary judgment . . . : whether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason [for an adverse action] was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis." Id. at 1226. In determining whether a plaintiff has provided sufficient evidence of discrimination, a court may consider "'(1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanations for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer).'" Dunaway v. Int'l Bhd. of Teamsters, 310 F.3d 758, 763 (D.C. Cir. 2002) (quoting Waterhouse v. District of Columbia, 298 F.3d 989, 993 (D.C. Cir. 2002)). One way a plaintiff may show an "employer's stated reason for [an]

employment action was not the actual reason" is by "produc[ing] evidence suggesting that the employer treated other employees of a different race, color, religion, sex, or national origin more favorably in the same factual circumstances." Brady, 520 F.3d at 495. In addition, inconsistent justifications for terminating an employee can raise a genuine issue of material fact that precludes summary judgment. See EEOC v. D.C. Pub. Schools, 277 F. Supp. 2d 44, 51 (D.D.C. 2003).

In this case, there is no question that Iweala's status as a black Nigerian female who was pregnant at the time she was terminated places her in protected groups, nor is there any dispute that her termination is an actionable adverse employment action. It is unclear from Iweala's filings which alleged actions by OTS beyond her termination she asserts as discriminatory adverse actions that are individually actionable as significant changes in her employment status; which ones she concedes, if any, are not individually actionable discrete acts, but cumulatively support a hostile work environment claim; or whether she is attempting to preserve her arguments in the alternative. For Iweala's claims of disparate treatment on the basis of race, national origin, and pregnancy, the defendant's motion focuses primarily on whether she has stated a claim with respect to her termination, with little discussion of what other alleged actions may or may not have been sufficiently substantial

changes in the terms and conditions of Iweala's employment to be actionable as discrete acts. Because OTS's motion does not clearly put Iweala or the court on notice that it seeks a ruling on whether Iweala has provided sufficient evidence demonstrating that any other alleged action taken against her besides her termination was a discrete act individually supporting a claim on its own, OTS' motion will be construed as challenging whether Iweala has provided sufficient evidence upon which a reasonable jury could conclude that her termination was the result of race, national origin, or pregnancy discrimination.

OTS has offered legitimate, nondiscriminatory reasons why it terminated Iweala's employment. It alleges that Iweala was terminated for poor work performance, including her missing deadlines and turning in assignments with errors, and her "inability to behave in a professional manner and accept constructive criticism regarding her work." (Def.'s Mot. for Summ. J. at 21; Pl.'s Opp'n, Ex. 2, Lobb Dep. Tr. 138:12-18.) Thus, the critical question is whether Iweala has put forth sufficient evidence for a reasonable jury to find that OTS' asserted reason for her termination was pretextual and the actual reason was her race, national origin, or pregnancy status.

Iweala has identified several pieces of evidence to show that OTS' alleged reasons for terminating her were pretextual. First, she submits her 2002 annual performance appraisal

reflecting performance ratings of "very good" in most areas. (Pl.'s Opp'n, Ex. 9, Performance Appraisal.) Iweala also provides evidence that there were two other employees who caused a disruption in the workplace who were not terminated. (See Pl.'s Opp'n, Ex. 10, Brown Dep. Tr. 135:6-10.) Finally, Iweala also submits her own testimony stating that she did not cause a disturbance in the office on the day she was terminated. (See Pl.'s Opp'n, Ex. 1 ("Iweala Dep. Tr.") 447:1-449:15.)

In addition, Iweala provides other circumstantial evidence in support of her disparate treatment claims. She claims that she was excluded from meetings to which other similarly-situated employees were invited, and that she was disciplined for missing a day of work when other similarly-situated individuals were not disciplined. Iweala also alleges that her supervisor, Joe Castle, removed her from help desk service because she had an accent. (Iweala Dep. Tr. 281:7-20.) Finally, Iweala alleges that she notified her supervisors about her pregnancy in October of 2002 and that she complained about her pregnancy on or around March 3, 2003, just before she was terminated. (See Iweala Dep. Tr. 439:1-16; 442:10-443:19.)

Viewing all of this evidence in the light most favorable to her, Iweala has carried her burden of identifying evidence upon which a reasonable jury could conclude that OTS' stated reasons for her termination were pretextual and that the actual reason

for her termination was unlawful discrimination. Thus, OTS' motion for summary judgment will be denied with respect to Iweala's claims of disparate treatment.

IV.  RETALIATION

Beyond her disparate treatment claims, Iweala also alleges a hostile work environment claim and a retaliation claim.  First, she alleges that her termination was unlawful retaliation against her because she complained about discrimination to a variety of supervisors at OTS.  (Pl.'s Opp'n at 5-6.)  For her retaliation claim, Iweala "must show 1) that she engaged in a statutorily protected activity; 2) that the employer took an adverse personnel action; and 3) that a casual connection existed between the two."  Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999) (internal quotation marks omitted).  "Temporal proximity" between a complaint of discrimination and an adverse action, such as termination, can "support a jury's finding of a causal link." Patterson v. Johnson, 505 F.3d 1296, 1299 (D.C. Cir. 2007).  In support of her retaliation claim, Iweala provides her answer to OTS' interrogatory and her deposition testimony stating that she complained to a variety of individuals about alleged discriminatory conduct toward her, including Diane Brown, Joseph Castle, and Gerald Lobb -- all of whom Iweala alleges were involved in the decision to terminate her -- and to OTS's Vice President of Operations, Pearlis Johnson.  (Pl.'s Opp'n, Ex. 5,

Interrog. 2; see Iweala Dep. Tr. 442:19-22, 449:11-450:11; Pl.'s Opp'n, Ex. 3, Johnson Dep. Tr. 22:18-25:21.) Notably, in her answers to OTS's interrogatories, Iweala contends that she complained repeatedly to Lobb in February, shortly before her termination. (See Pl.'s Opp'n, Ex. 5, Interrog. 2.) In addition, as is discussed above, Iweala has provided evidence tending to show that OTS' proffered reasons for her termination was pretextual. In light of the temporal proximity between Iweala's complaints of discrimination and her termination, Iweala has identified sufficient evidence in support of her retaliation claim to withstand OTS' motion for summary judgment.

V.   HOSTILE WORK ENVIRONMENT

Iweala also alleges a hostile work environment claim. OTS contends that Iweala failed to properly exhaust her administrative remedies with respect to any hostile work environment claim by not alleging it in the charge of discrimination she filed with the D.C. Office of Human Rights and the EEOC. "[A] Title VII lawsuit following the EEOC charge is limited in scope to claims that are like or reasonably related to the allegations of the charge and growing out of such allegations." Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995) (internal quotation marks omitted). However, the court of appeals has cautioned that "the administrative charge requirement should not be construed to place a heavy technical burden on

'individuals untrained in negotiating procedural labyrinths[.]'" Id. (quoting Loe v. Heckler, 768 F.2d 409, 417 (D.C. Cir. 1985)). Nonetheless, "the requirement of some specificity in a charge is not a mere technicality." Id. (internal quotation marks omitted).

When Iweala first filed her charge of discrimination on April 21, 2003, she checked the boxes for discrimination on the basis of sex, race and national origin, and retaliation. She then filed an amended charge on May 8, 2003, where she checked the boxes for discrimination on the basis of sex and race, retaliation, and other, although she did not clearly specify what claim she alleged as falling within the "other" category. She also checked the box for a continuing action each time. In her first charge, she states that "she was intentionally isolated from attending most of the analyst/programmers meetings several times" between December 2001 and May 2002. (Def.'s Mot., Ex. H, Apr. 21, 2003 Charge.) She also states that she was "subjected to different terms and conditions of employment regarding discipline, tardiness, and workload." (Id.) In her second charge, she states that she was harassed and discriminated against because of her first pregnancy, and that when she was visibly pregnant with her second child, her supervisors increased her workload and shortened her deadlines. (Def.'s Mot., Ex. H, May 8, 2003 Charge.) Although Iweala did not expressly state she

was alleging a hostile work environment claim, her administrative charges identify the facts underlying her claim, including her exclusion from meetings and increased workload.  Thus, her hostile work environment claim is at least reasonably related to the allegations in her administrative charge, and she has properly exhausted her administrative remedies with respect to her hostile work environment claim.

"When the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive enough to alter the conditions of the victim's employment and create an abusive working environment, . . . Title VII is violated."  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal citation and quotation marks omitted).  In Faragher v. City of Boca Raton, 524 U.S. 775 (1998), the Supreme Court made clear, however, that for a successful hostile work environment claim, "conduct must be extreme to amount to a change in the terms and conditions of employment."  Id. at 788.  Thus, "offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"  Id.; see Holbrook v. Reno, 196 F.3d 255, 262-63 (D.C. Cir. 1999) (concluding that no reasonable jury could have found that an allegedly "abusive" four-hour interview alone altered the conditions of the plaintiff's employment where the

plaintiff failed to show any post-interview changes to her work environment). In addition, "in order to be actionable under the statute, a [hostile work] environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Faragher, 524 U.S. at 787. Determining whether an employee's work environment is hostile requires examining "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether [such conduct] is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance." Vickers, 493 F.3d at 197 (internal quotation marks omitted).

Here, Iweala alleges that she experienced a hostile work environment when her supervisors increased her workload and shortened her deadlines so that she could not complete her assignments, "ostracized" her and treated her "in a rude manner," repeatedly excluded her from meetings to which she should have been invited, removed her from serving on OTS' help desk, reprimanded her on one occasion for failing to show up for work because of snow when others were not reprimanded, and subjected her to profanity. (Pl.'s Opp'n at 14.) Iweala's main evidence in support of her allegations is her own deposition testimony attesting to her treatment and stating that she perceived the

alleged actions taken against her as the result of her race, national origin, and pregnancy status, and that these actions interfered with the conditions of her employment. (See Iweala Dep. Tr. 197:1-198:15, 277:10-281:20, 286:12-288:12, 434:4-12.) Iweala also provides the deposition testimony of her former supervisor Lionel Mew conceding that profanity was sometimes used in the workplace. (Pl.'s Opp'n, Ex. 12, Mew Dep. Tr. 65:1-19.) Although, as OTS points out, absent from Iweala's allegations is any evidence of overt comments about her race, national origin, or pregnancy status made directly to her, Iweala has provided other circumstantial evidence, described above, supporting her allegations that OTS' actions were motivated by unlawful discrimination. Thus, Iweala has sufficiently raised a disputed factual question as to whether an objectively reasonable person would find Iweala's workplace to be "permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe" to alter the conditions of her employment. Harris, 510 U.S. at 370 (internal quotation marks omitted). Accordingly, OTS' motion for summary judgment on Iweala's hostile work environment claim will be denied.

## CONCLUSION AND ORDER

Because Iweala has conceded that any claim arising from a discrete act of discrimination more than 300 days before the filing of her administrative charge is time-barred, OTS' motion

for summary judgment will be granted and judgment will be entered in favor of the defendant with respect to any claim challenging a discrete act of discrimination that occurred more than 300 days before Iweala filed her administrative charge with the EEOC. On the other hand, because Iweala's claims are not barred by her visa status at the time of her employment with OTS, and because she has provided sufficient evidence to raise genuine disputes of material fact with regard to her disparate treatment, retaliation, and hostile work environment claims, OTS' motion for summary judgment will be denied in all other respects. Accordingly, it is hereby

ORDERED that the defendant's motion [31] for summary judgment be, and hereby is, GRANTED IN PART and DENIED IN PART. Judgment is ENTERED in favor of the defendant with respect to any claim challenging a discrete act of discrimination that occurred more than 300 days before Iweala filed her administrative charge with the EEOC. The motion is denied in all other respects.

SIGNED this 14th day of July, 2009.

```
                    /s/
             RICHARD W. ROBERTS
             United States District Judge
```