UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

|                              |                                              |
| ---------------------------- | -------------------------------------------- |
| KATHERINE A. TELISKA,        | )                                            |
|                              | )                                            |
|            Plaintiff,        | )                                            |
|                              | )                                            |
|            v.                | )   Civil Action No. 09-2422 (RWR)           |
|                              | )                                            |
| JANET NAPOLITANO,            | )                                            |
|                              | )                                            |
|            Defendant.        | )                                            |
_____

## MEMORANDUM OPINION AND ORDER

Plaintiff Katherine A. Teliska filed this action against her former employer, the Secretary of the Department of Homeland Security ("DHS"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq., alleging that the Secret Service, a DHS agency, subjected her to a hostile work environment in retaliation for her complaining about sexual harassment. DHS moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss Teliska's complaint for failure to state a claim for which relief can be granted. Because Teliska's complaint pleads a plausible claim of retaliatory hostile work environment, DHS's motion will be denied.

## BACKGROUND

In February 2006, Teliska lived in Odenton, Maryland and worked as an Executive Officer for Pentagon official Maxie McFarland. Teliska applied through the Secret Service's Baltimore office for a position as a Secret Service Special Agent

("SA"). (Compl. ¶¶ 8-9.) SA Sean McCarthy was Teliska's point of contact for interviews and other application activities with the Secret Service. McCarthy conducted Teliska's initial application interview in Baltimore. (Id. ¶¶ 10-12.) Teliska alleges that on the day of the interview, McCarthy told her he was attracted to her, asked her to refrain from applying to the Secret Service because McCarthy would not be able to date an applicant, and asked her to spend the following weekend with him at his condominium in New York. Teliska declined McCarthy's invitation (id. ¶¶ 17-20), and later informed McFarland of McCarthy's inappropriate advances (id. ¶¶ 28).

In the Spring of 2006, McFarland instructed a colleague to contact Secret Service SA Tom Armis and complain about McCarthy's harassment of Teliska. (Id. ¶ 29.) According to the complaint, as a result of McFarland's intervention, the Secret Service investigated McCarthy's harassment of Teliska, and eventually removed McCarthy from Teliska's application file as a recruiter. (Id. ¶¶ 32-33.) Later in 2006, Teliska was interviewed by a panel of Secret Service agents. During the panel interview, Special Agent in Charge Ed Lugo informed Teliska that his office was composed primarily of men, and asked whether that should preclude him from hiring her "since [Teliska] obviously [had] a 'sting' out for men[.]" (Id. ¶¶ 38-40.)

In September 2006, the Secret Service hired Teliska to begin work in October 2006. (Id. ¶ 46.) According to Teliska, from the month she was hired through the beginning of December 2008, the Secret Service continuously retaliated against her for objecting to McCarthy's behavior. (Id. ¶ 47.) Teliska alleges that even though McCarthy had told her she would work in the Washington, D.C. region where she lived, the agency assigned her to New York and denied her a posting near Washington, D.C., falsely claiming no positions were available there (id. ¶¶ 48-49, 57); that the agency forced her to in-process in New York instead of following the normal procedure of having in-processing in the office of recruitment (Baltimore), imposing significant financial hardship on her (id. ¶¶ 50-53, 58); that her duties were reassigned during the United Nations General Assembly session in August 2008 in a manner that reduced her overtime hours; that the Secret Service denied her request for a hardship transfer to Washington D.C. in September 2008 (id. ¶¶ 69-79); that in November 2008 her supervisor who was good friends with McCarthy de-selected her for a Washington, D.C. assignment she requested because she sought to drive there in her personal car rather than in the agency vehicle he demanded she drive that she could not have used for personal errands, even though her replacement was not required to drive the agency vehicle (id. ¶¶ 83-90); that also in November 2008 her New York office never officially

notified her of her assignment by headquarters to an imminent overseas Presidential protection detail which caused her to nearly miss the departing military plane (id. ¶¶ 94-103); and that the Secret Service denied her November 22, 2008 request to protect Vice President-elect Biden on Thanksgiving and required other agents, who had not volunteered, to work that detail (id. ¶¶ 104-105).

Teliska alleges that in November of 2008, she asked to speak with John McQuade, Assistant to the Special Agent in Charge ("ATSAIC") in New York about "a potential EEO issue." (Id. ¶¶ 91-92.) On December 19, 2008, she contacted an EEO officer to complain of sex discrimination and sexual harassment, and to request counseling with an Agency EEO specialist. (Id. ¶ 106.) According to Teliska, in January 2009, Evyenia Poumpouras, a special agent supervised by McCarthy, falsely accused Teliska of sleeping on the job and losing track of the whereabouts of the protectee to whom she was assigned. Even though the Special Agent In Charge of the New York office told Teliska that she was not responsible for the incident, ATSAIC McQuade removed Teliska from her duties as a midnight shift agent for the protectee and moved her to midnight response for counterfeit money arrests. The ATSAIC informed Teliska that her reassignment was based upon Poumpouras's accusations. Teliska alleges that her reassignment was humiliating and raised unfounded questions about her

competence and professionalism.  (Id. ¶¶ 112-125.)  Almost immediately after she was reassigned, the supervisor of the counterfeit squad accused Teliska of not following appropriate protocol for the midnight response unit.  (Id. ¶¶ 130-131.)

On February 4, 2009, Teliska gave a written statement to Inspector Eric Whatley and ATSAIC Kim Cheatle detailing the actions that Teliska considered to be retaliation against her for her complaint against McCarthy.  (Id. ¶¶ 134-135.)  Inspector Whatley told Teliska that her complaint would be forwarded to the EEO office, but asked Teliska whether she merely had a personal conflict with Poumpouras.  (Id. ¶¶ 133, 136.)  The Secret Service granted Teliska a transfer to the Washington D.C. office later that month, since she married a Secret Service agent living there.  (Id. ¶ 141.)  However, rather than continue her assignment to an Electronic Crimes Squad for which she had the requisite special training, the Secret Service assigned her to the Washington Investigative Team and assigned to the Electronic Crimes Squad agents who did not have the requisite special training she had.  (Id. ¶¶ 142-143.)

On March 13, 2009, Teliska filed a formal EEO discrimination complaint with the DHS EEO office, alleging claims of sex discrimination and reprisal for having engaged in prior EEO activity.  (Id. ¶ 181.)  Teliska left the Secret Service later that month.  (Id. ¶ 144.)  In November 2009, the DHS issued a

final agency decision ("FAD") dismissing Teliska's EEO complaint as untimely.  (Id. ¶¶ 191-193.)

Teliska filed this action on December 23, 2009.  Teliska's complaint alleges one count of discriminatory hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a).  (Id. ¶¶ 151-166.)  The DHS has moved to dismiss Teliska's complaint, arguing that it failed to sufficiently allege a claim of retaliatory hostile work environment because her hostile work environment claim consists of discrete acts of retaliation, for some of which Teliska failed to exhaust her administrative remedies, and the remainder of which are insufficient as a matter of law to constitute a claim of retaliatory hostile work environment.  Teliska opposes the motion, arguing that she timely pursued administrative relief and adequately pled a claim of retaliatory hostile work environment.

## DISCUSSION

"A complaint can be dismissed under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff fails to state a claim upon which relief can be granted."  Maib v. FDIC, 771 F. Supp. 2d 14, 17 (D.D.C. 2011) (quoting Peavey v. Holder, 657 F. Supp. 2d 180, 185 (D.D.C. 2009) (citing Fed. R. Civ. P. 12(b)(6))).  "A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint."  Smith-Thompson v. Dist. of Columbia, 657 F. Supp. 2d 123, 129 (D.D.C. 2009).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, acceptable as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556, 570 (2007)). The complaint must be construed in the light most favorable to the plaintiff and "the court must assume the truth of all well-pleaded allegations." Warren v. District of Columbia, 353 F.3d 36, 39 (D.C. Cir. 2004).

"Under Federal Rule of Civil Procedure 8(a)(2), a claim need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1114 (D.C. Cir. 2000) (quoting Fed. R. Civ. P. 8(a)(2)). Plaintiffs filing employment discrimination claims are not subject to heightened pleading standards,[1] see Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (cited approvingly in Twombly, 550 U.S. at 569-570), and they are not required to "plead law or match facts to every element of a legal

---

[1] See Sparrow, 216 F.3d at 1118 ("We understand why district courts may want to alleviate their crowded dockets by disposing quickly of cases that they believe cannot survive in the long run. But . . . this may not be accomplished by employing heightened pleading standards . . . . Rather, federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later.") (internal quotation marks omitted).

theory."  Krieger v. Fadely, 211 F.3d 134, 136 (D.C. Cir. 2000)

(internal quotation and citation omitted).  Historically,

> [t]he D.C. Circuit has long recognized the ease with
> which a plaintiff claiming employment discrimination
> can survive a Rule 12(b)(6) motion to dismiss for
> failure to state a claim upon which relief may be
> granted.  "Because racial discrimination in employment
> is a claim upon which relief can be granted, . . . 'I
> was turned down for a job because of my race' is all a
> complaint has to state to survive a motion to dismiss
> under [Rule] 12(b)(6)."

Rouse v. Berry, 680 F. Supp. 2d 233, 235 (D.D.C. 2010) (quoting

Potts v. Howard Univ. Hosp., 258 Fed. Appx. 346, 347 (D.C. Cir.

2007)).  All that is required of a complaint is that it provide

enough factual heft to show a plausible entitlement to relief,

that is, that it contain "enough facts to [nudge] a claim to

relief . . . across the line from conceivable to plausible[.]"

Twombly, 550 U.S. at 570.

"The elements of a claim of retaliation are that the

plaintiff engaged in a statutorily protected activity, the

employer treated the plaintiff adversely, and a causal connection

existed between the two."  Winston v. Clough, 712 F. Supp. 2d 1,

11 (D.D.C. 2010) (citing Wiley v. Glassman, 511 F.3d 151, 155

(D.C. Cir. 2007); Rochon v. Gonzales, 438 F.3d 1211, 1216-20

(D.C. Cir. 2007); Iweala v. Operational Techs. Servs., 634 F.

Supp. 2d 73, 83 (D.D.C. 2009) (internal quotation marks

omitted)).  "Statutorily protected activities include the filing

of [EEO] complaints and the initiation of litigation to vindicate

claims of employment discrimination or retaliation." Shipman v. Vilsack, 692 F. Supp. 2d 113, 116 (D.D.C. 2010) (quoting Baloch v. Norton, 517 F. Supp. 2d 345, 354 (D.D.C. 2007) (citing Forkkio v. Powell, 306 F.3d 1127, 1131-32 (D.C. Cir. 2002)).

"In this circuit, a hostile work environment can amount to retaliation under Title VII." Hussain v. Nicholson, 435 F.3d 359, 366 (D.C. Cir. 2006) (citing Singletary v. Dist. of Columbia, 351 F.3d 519, 526 (D.C. Cir. 2003)).  To state a hostile work environment claim, Teliska must allege that she suffered harassment because of her protected activity, that her employer knew or should have known of the alleged harassment and failed to take remedial action, and that the hostile environment interfered with her work.  Winston, 712 F. Supp. 2d at 12 (citing King v. Pierce Assocs., 601 F. Supp. 2d 245, 248 (D.D.C. 2009) (citing Davis v. Coastal Int'l Sec., Inc., 275 F.3d 1119, 1122-23 (D.C. Cir. 2002)); Roberson v. Snow, 404 F. Supp. 2d 79, 97 n.8 (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993); Faragher v. Boca Raton, 524 U.S. 775, 788 (1998)). "A hostile work environment exists when 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[.]'"  Roberson, 404 F. Supp. 2d at 97 n.8.

DHS argues that Teliska failed to exhaust her administrative remedies for all of the discrete incidents that she cites to support her claim of hostile work environment that occurred before October 20, 2008, which is 45 days before the FAD suggests Teliska first sought counseling.[2]  (Def.'s Mem. in Supp. of Def.'s Mot. to Dismiss ("Def.'s Mem.") at 8-12.)  However, a "hostile work environment claim . . . 'is composed of a series of separate acts that collectively constitute one unlawful employment practice.'"  Smith-Thompson v. Dist. of Columbia, 657 F. Supp. 2d 123, 131 (D.D.C. 2009) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002) and 42 U.S.C. § 2000e-5(e)(1)).  "Unlike a claim premised on discrete acts of discrimination, a hostile work environment claim cannot be reduced to a single action on a single day because '[its] very

---

[2] "Before filing a Title VII suit, a federal employee must timely pursue her administrative remedies, following the requirements set forth in 29 C.F.R. § 1614."  Hines v. Bair, 594 F. Supp. 2d 17, 22 (D.D.C. 2009).  "If a plaintiff believes that she has been unlawfully discriminated against, 'she must consult an EEO counselor in an effort to resolve the situation informally.'"  Id. (citing 29 C.F.R. § 1614.105(a)).  This contact with the EEO counselor must occur within 45 days of the alleged discriminatory incident.  Id. (citing 29 C.F.R. § 1614.105(a)(1)).  If informal counseling fails to resolve the grievance, the employee then has 15 days from when the employee receives notice that counseling has ended to file a written complaint.  See Chandler v. Bernanke, 531 F. Supp. 2d 193, 196 (D.D.C. 2008); 29 C.F.R. § 1614.106(b).  After filing a written complaint, the employee may file a civil action once the agency issues an adverse final decision or 180 days elapse without a decision, whichever happens first.  See 42 U.S.C. § 2000e-16(c).

nature involves repeated conduct' and it is based 'on the cumulative effect of individual acts.'" Smith-Thompson, 657 F. Supp. 2d at 131 (quoting Morgan, 536 U.S. at 115). For a hostile work environment claim, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." Smith-Thompson, 657 F. Supp. 2d at 131 (quoting Morgan, 536 U.S. at 115). DHS does not dispute that at least some acts occurred within the filing period (Def.'s Mem. at 15), so even if discrete acts Teliska complained of were not administratively exhausted and could not support stand-alone claims, they "may be considered as incidents supporting the retaliatory hostile work environment claim." Graham v. Gonzalez, Civil Action No. 03-1951 (RWR), 2005 WL 3276180, at *24 (D.D.C. September 30, 2005).

DHS also argues that the remaining incidents cited by Teliska fail to rise to the level necessary to support a hostile work environment claim, and that Teliska's complaint should be dismissed as an impermissible attempt to "bootstrap" unexhausted, discrete acts of discrimination into a retaliatory hostile work environment claim. (Def.'s Mem. at 13-24.) However, with all reasonable inferences drawn in her favor, her complaint contains enough facts to nudge her claim across the line from conceivable to plausible. Teliska alleges as protected activities that she

engaged in, at minimum, reporting McCarthy's misconduct to McFarland in 2006,[3] asking the ATSAIC in November 2008 for an appointment concerning a potential EEO issue, and initiating the EEO proceeding in December 2008.  Teliska alleges as evidence of pervasive discriminatory abuse that the Secret Service placed her in a geographic location both to in-process and to work that was punitive for her, denied her a hardship relocation and a Washington D.C. assignment, unreasonably denied her overtime opportunities that she sought to help offset the draining cost of her adverse geographic location, caused her nearly to fail to report for a Presidential protection assignment, damaged her professional standing by removing her from a protection assignment based upon false accusations of misconduct, and barred her assignment to a special unit for which she was qualified while assigning others to it who were unqualified.  Teliska's complaint alleges that much of this purported harassment was causally connected to her protected activity because it was perpetrated by friends of McCarthy, the SA she complained about in her initial complaint to McFarland.  (Compl. ¶¶ 82, 112, 127-128.)  "A plaintiff alleging retaliation faces a low hurdle at

---

[3] Because DHS does not challenge that Teliska's reporting of McCarthy's behavior to McFarland was a protected activity (Def.'s Mem. at 22-23), this opinion will assume without deciding that such activity was indeed protected. See CSX Transp., Inc. v. Commercial Union Ins., Co., 82 F.3d 478, 482-83 (D.C. Cir. 1986); Felter v. Salazar, 679 F. Supp. 2d 1, 2 n.2 (D.D.C. 2010).

the motion to dismiss stage[.]" <u>Winston</u>, 712 F. Supp. 2d at 11 (citing <u>Rochon</u>, 438 F.3d at 1219-1220); <u>see</u> <u>also</u> <u>Ali v. Dist. of Columbia</u>, 697 F. Supp. 2d 88, 92 (D.D.C. 2010) (denying motion to dismiss the plaintiff's hostile work environment claim even though "it [was] unlikely that [the plaintiff's] claims of discrimination will ultimately prove meritorious"); <u>Vance v. Chao</u>, 496 F. Supp. 2d 182, 185, 187 (D.D.C. 2007) (citing <u>Twombly</u>, and denying a motion to dismiss, stating that at the motion to dismiss stage, "[the] plaintiff can meet her prima facie [sic] burden simply by alleging that the adverse actions [that were supported by facts in her complaint] were caused by her protected activity"); <u>Rhodes v. Napolitano</u>, 656 F. Supp. 2d 174, 187 (D.D.C. 2009) (finding the plaintiff's allegation that the defendant initiated the retaliatory action in response to her previous EEOC activity "sufficient to survive a motion to dismiss"); <u>Dave v. Lanier</u>, 606 F. Supp. 2d 45, 52-53 (D.D.C. 2009) (denying the defendant's motion to dismiss the plaintiff's claim of retaliation because "the plaintiff . . . made out a legally cognizable claim of retaliation by contending that he engaged in a protected activity by reporting the trainer's allegedly discriminatory conduct and that in response to his complaint, the defendant retaliated against him by subjecting him to materially adverse actions"); <u>Holmes-Martin v. Leavitt</u>, 569 F. Supp. 2d 184, 193 (D.D.C. 2008) (denying the defendant's motion

to dismiss the plaintiff's claim of hostile work environment because the plaintiff "alleged some conduct in support of her claim," and noting that a plaintiff is required to plead facts which "support," not "establish," the claim).  Taken together, Teliska's allegations amply state a claim of a retaliatory hostile work environment.  Therefore, the motion to dismiss Teliska's complaint will be denied.

CONCLUSION AND ORDER

Teliska adequately alleges a plausible claim of retaliatory hostile work environment in her complaint.  Accordingly, it is hereby

ORDERED that the defendant's motion [5] to dismiss be, and hereby is, DENIED.

SIGNED this 28th day of November, 2011.

_____/s/_____
RICHARD W. ROBERTS
United States District Judge
