OPINION
WILKINSON, Chief Judge:
This case requires us to decide whether the Age Discrimination in Employment Act (ADEA) covers foreign nationals who apply in foreign countries for jobs in the United States. We hold that the Act does not cover such persons. We thereby affirm the judgment of the district court, albeit on different grounds.
I.
Plaintiff Luis Reyes-Gaona is a Mexican national over the age of 40. Defendant North Carolina Growers Association (NCGA) is an American corporation that assists agricultural businesses in North Carolina in securing farm labor through the federal H-2A agricultural worker program.[1] Defendant Del-Al is an agent of NCGA that recruits H-2A workers for NCGA and its members. In May 1998, Reyes-Gaona went to a Del-Al office in Mexico and asked to be placed on a list of workers seeking employment in North Carolina via the H-2A program. Del-Al told Reyes-Gaona that NCGA would not accept workers over forty years old unless that person had worked for NCGA before. Reyes-Gaona filed suit against NCGA and Del-Al, alleging age discrimination in violation of the ADEA.
As the district court noted, an ADEA plaintiff must prove, inter alia, that he was qualified for the job he sought. Under Fourth Circuit precedent, for a foreign national to be “qualified” for a position, he must be authorized for employment in the United States at the time in question. See Egbuna v. Time-Life Libraries, Inc., 153 F.3d 184, 187 (4th Cir.1998) (en banc) (per curiam). The district court granted defendants’ Rule 12(b)(6) motion to dismiss because it was undisputed that Reyes-Gaona was not authorized *864 to work in the United States at the time he sought employment with NCGA. In reaching this decision, the district court declined to address the threshold argument that the presumption against extra-territoriality barred the application of the ADEA to this case. Reyes-Gaona appeals.
II.
Plaintiff is a foreign national who applied in a foreign country for work in the United States. Accordingly, we begin, as we must, by acknowledging the “longstanding principle of American law ‘that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.’ ” EEOC v. Arabian American Oil Co., 499 U.S. 244, 248, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991) (quoting Foley Bros., Inc. v. Filardo, 336 U.S. 281, 285, 69 S.Ct. 575, 93 L.Ed. 680 (1949)). This interpretive canon is an especially important one as it “serves to protect against unintended clashes between our laws and those of other nations which could result in international discord.” Id. Thus, the presumption against extra-territorial application of a federal statute can be overcome only if there is an “affirmative intention of the Congress clearly expressed.” Id. (quoting Benz v. Compania Naviera Hidalgo, S.A., 353 U.S. 138, 147, 77 S.Ct. 699, 1 L.Ed.2d 709 (1957)). Since this determination is necessarily “a matter of statutory construction,” Arabian, 499 U.S. at 248, 111 S.Ct. 1227, we begin with the text of the ADEA itself.
The ADEA makes it unlawful “for an employer” to “fail or refuse to hire” or “otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual’s age.” 29 U.S.C. § 623(a)(1). The term “employer” means any company “engaged in an industry affecting commerce who has twenty or more employees” and includes the agents of such companies. Id. § 630(b). The term “employee” means “an individual employed by any employer,” and “includes any individual who is a citizen of the United States employed by an employer in a workplace in a foreign country.” Id. § 630(f)- Prior to 1984, the ADEA did not contain the language regarding U.S. citizens employed in foreign workplaces. To the contrary, Section 626(b) adopted language from the Fair Labor Standards Act (FLSA) excluding from coverage any individual “whose services during the workweek are performed in a workplace within a foreign country.” Id. § 213(f).
Based on the exclusionary language adopted from the FLSA, many courts held that, before 1984, the ADEA had a purely domestic focus and did not cover American citizens working for American companies in foreign countries. See, e.g., Thomas v. Brown & Root, Inc., 745 F.2d 279, 281 (4th Cir.1984) (per curiam).[2] The presumption against the extra-territorial application of American laws required this result because absent a clear statement from Congress, the scope of American law is limited to “the territorial jurisdiction of the United States.” Arabian, 499 U.S. at 244, 111 S.Ct. 1227. Thus the presumption pre *865 vented the ADEA from regulating events taking place in foreign countries even when they involved citizens of the United States. And the Act certainly could not have reached the even more attenuated situation of a foreign national applying in a foreign country for work in the United States.
In 1984, Congress partially closed this gap. Congress responded to the Thomas line of cases by amending the ADEA to give it limited extra-territorial application. The definition of “employee” was amended to include “any individual who is a citizen of the United States employed by an employer in a workplace in a foreign country.” 29 U.S.C. § 630(f). This new statutory language explicitly expanded the ADEA to prohibit U.S. companies from discriminating against U.S. citizens employed in foreign countries. Congress also included an accompanying provision outlawing such discrimination by subsidiaries of U.S. corporations. See id. § 623(h). The language was “carefully worded to apply only to citizens of the United States” who worked for a U.S. company or its subsidiary because Congress recognized that the “well-established principle of-sovereignty” prohibited the United States from imposing “its labor standards on another country.” Denty v. SmithKline Beecham Corp., 109 F.3d 147, 150 (3d Cir.1997) (quoting S.Rep. No. 98-467, at 27 (1984), reprinted in 1984 U.S.C.C.A.N. 2974, 3000).
These amendments demonstrated that “when it desires to do so, Congress knows how to” expand “the jurisdictional reach of a statute.” Arabian, 499 U.S. at 258, 111 S.Ct. 1227. According to the Arabian Court, “after several courts had held that the ADEA did not apply overseas” Congress enacted a set of changes whose “expressed purpose ... was to make ‘provisions of the Act apply to citizens of the United States employed in foreign countries by U.S. corporations or their subsidiaries.’ ” Id. at 259, 111 S.Ct. 1227 (quoting S.Rep. No. 984167, at 2 (1984), U.S.C.C.A.N. at 2975). Notably missing from the 1984 amendments, however, is any provision regulating the conduct at issue here. Congress explicitly gave the ADEA extra-territorial application with respect to certain U.S. citizens while simultaneously declining to extend coverage to foreign nationals like Reyes-Gaona. Nothing in the amendments regulates age discrimination by U.S. corporations against foreign nationals in foreign countries. And the doctrine of expressio unis est exclusio alterius instructs that where a law expressly describes a particular situation to which it shall apply, what was omitted or excluded was intended to be omitted or excluded. Indeed, neither Reyes-Gaona nor the Equal Employment Opportunity Commission (EEOC) cites a case, and we can find none ourselves, where the ADEA was interpreted to reach a situation analogous to the case at bar. Thus, a faithful reading of the plain text of the statute, especially in light of the 1984 amendments, compels the conclusion that Reyes-Gaona’s claim is not sustainable under the ADEA.
Reyes-Gaona and the EEOC disagree. They claim that this case does not require extra-territorial application of the ADEA because the job Reyes-Gaona applied for was in the United States.[3] The crux of *866 their argument is that when determining whether a suit requires extra-territorial application of the ADEA, courts always look to the place of employment rather than the place where the decision was made. Because Reyes-Gaona applied for a job in the United States, they argue, the presumption against extra-territoriality is not implicated by this suit. In support they note that the ADEA itself contains the term “workplace.” For example, “employee” is defined to include U.S. citizens employed “in a workplace in a foreign country.” 29 U.S.C. § 630(f) (emphasis added). And the Act excepts from its reach employees “in a workplace in a foreign country” where compliance would conflict with the laws of the country “in which such workplace is located.” Id. § 623(f)(1) (emphasis added).
We are not persuaded. All of these statutory references come from the 1984 amendments to the ADEA which, as previously explained, do not cover Reyes-Gao-na. Nothing in the ADEA provides that it shall apply anytime the workplace is in the United States regardless of the nationality of the applicant or the country in which the application was submitted. And the fact that the 1984 amendments refer to workplace does not mean that the Act focuses on work situs to the exclusion of the situs of the application or the nationality of the applicant. Indeed, the EEOC is insisting that the presumption against extra-territoriality has no applicability even when a foreign national submits a job application in a foreign country.
In addition to its statutory argument, the EEOC cites various decisions from the Thomas line of cases, see supra n. 2, all of which involved events that preceded the 1984 amendments. The EEOC claims these cases prove that courts look to the employee’s actual or proposed work situs to determine whether the ADEA is being applied in an extra-territorial manner. This is not, however, what these cases demonstrate. As discussed above, the Thomas line of -cases stands for the rather unremarkable proposition that before 1984 the ADEA had no extra-territorial application at all — not even for U.S. citizens working abroad for American companies. The fact that some suits were barred because of the international location of the employee’s workstation says nothing about whether a foreign national can file suit under the ADEA merely because the proposed workstation is in the United States.
The simple submission of a resume abroad does not confer the right to file an ADEA action. Indeed, such a broad reading of the Act could have staggering consequences for American companies. Expanding the ADEA to cover millions of foreign nationals who file an overseas application for U.S. employment could exponentially increase the number of suits filed and result in substantial litigation costs. If such a step is to be taken, it must be taken via a clear and unambiguous statement from Congress rather than by judicial fiat.
III.
The Supreme Court has instructed the lower courts to take seriously the presumption against extra-territorial application of U.S. laws. In keeping with these instructions, many lower courts, including this one, held that the ADEA had no extra-territorial application prior to 1984. Congress responded by amending the Act to provide for limited extra-territorial reach. Since these amendments do not reach the case at bar, there remains nothing in the text of the ADEA to rebut the presumption against extending it to cover Reyes-Gaona. And the limited nature of the 1984 amendments indicates that foreign nationals in foreign countries are not *867 covered by the ADEA, regardless of whether they are seeking employment in the United States or elsewhere.
For the foregoing reasons, the judgment of the district court is .

AFFIRMED.

. Agricultural employers who anticipate a labor shortage for temporary or seasonal jobs may petition the government for permission to employ foreign workers on a temporary basis pursuant to the H-2A visa program. 8 U.S.C. § 1101 (a)(l5)(H)(ii)(a). Before the Immigration and Naturalization Service will approve an application, the employer must certify that there is a domestic labor shortage and that employing foreign workers will not adversely affect the wages and working conditions of similarly employed American workers. Id. § 1188(a)(1).

. Six other circuits reached the same conclusion. And although many of these decisions were handed down after 1984, each involved events that preceded the enactment of the 1984 amendments. See Lopez v. Pan Am World Services, Inc., 813 F.2d 1118 (11th Cir.1987); S.F. DeYoreo v. Bell Helicopter Textron, Inc., 785 F.2d 1282 (5th Cir.1986); Ralis v. RFE/RL, Inc., 770 F.2d 1121 (D.C.Cir.1985); Pfeiffer v. Wm. Wrigley Jr. Co., 755 F.2d 554 (7th Cir.1985); Zahourek v. Arthur Young & Co., 750 F.2d 827 (10th Cir.1984); Cleary v. U.S. Lines, Inc., 728 F.2d 607 (3d Cir.1984).

. Reyes-Gaona separately claims that the issue of extra-territoriality is not properly before this court because the district court did not address the issue below. This is wrong. It is axiomatic that "we may affirm the dismissal by the district court on the basis of any ground supported by the record even if it is not the basis relied upon by the district court.” Ostrzenski v. Seigel, 111 F.3d 245, 253 (4th Cir.1999).