WILKINSON, Circuit Judge,
concurring:
The unique properties of bankruptcy law compel an affirmance of the district court. The bankruptcy laws provide an integrated scheme for gathering and disbursing the assets of a debtor’s estate. See, e.g., Grady v. A.H. Robins Co., 839 F.2d 198, 202 (4th Cir.1988). The Code anticipates that this will take place within a single proceeding, rather than asset by asset in inefficient piecemeal litigation. Indeed, a major purpose of the Bankruptcy Code is to fore *155 stall “a chaotic and uncontrolled scramble for the debtor’s assets in a variety of uncoordinated proceedings in different courts.” Underwood v. Hilliard (In re Rimsat, Ltd.), 98 F.3d 956, 961 (7th Cir.1996) (internal quotation marks omitted); see also 5 Collier on Bankruptcy ¶ 541.01 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.2005) (explaining that the “central aggregation of property ... promotes the effectuation of the fundamental purposes of the Bankruptcy Code”). Ease and centrality of administration are thus foundational characteristics of bankruptcy law.
For these reasons, Congress has broadly defined property of the estate as property “wherever located and by whomever held.” 11 U.S.C. § 541(a) (2000). This broad definition reflects congressional support for the Code’s extraterritorial application in appropriate circumstances. See Hong Kong & Shanghai Banking Corp. v. Simon (In re Simon), 153 F.3d 991, 996 (9th Cir.1998). The fraudulent transfer provision, 11 U.S.C. § 548(a) (2000), is part and parcel of Congress’s overarching objective to aggregate assets. Allowing this constructively fraudulent transfer from the debtor to her children would impair the orderly administration of the bankruptcy estate. I can hardly believe, therefore, that Congress wanted us to excise § 548(a)—and this provision alone—from the remainder of the Bankruptcy Code. And it is unlikely that Congress would desire to accord an invariable exemption from the Code’s operation to those who leave our borders to engage in fraud. This is particularly true where, as here, the debtor, the transferees, and virtually every creditor are located in the United States.
My colleague’s careful opinion leaves intact the Supreme Court’s strong presumption against extraterritorial application of congressional statutes. See EEOC v. Arabian Am. Oil Co., 499 U.S. 244, 248, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991) (Aramco); Foley Bros. v. Filardo, 336 U.S. 281, 285, 69 S.Ct. 575, 93 L.Ed. 680 (1949). Bankruptcy is, in general, materially different from those provisions held not to apply extraterritorially, such as anti-discrimination statutes, see Aramco, 499 U.S. at 248, 111 S.Ct. 1227 (Title VII); Reyes-Gaona v. N.C. Growers Ass’n, 250 F.3d 861, 864-65 (4th Cir.2001) (Age Discrimination in Employment Act), or hourly wage laws, see Foley Bros., 336 U.S. at 285, 69 S.Ct. 575. In those contexts, ease of administration is not a raison d’etre, and congressional intent for extraterritorial application is considerably less clear. See also Curtis A. Bradley & Jack L. Goldsmith, Foreign Relations Law 528 (2003) (noting that courts have treated bankruptcy law with special consideration in the extraterritoriality context). The special context of bankruptcy law, therefore, provides little occasion to set forth general pronouncements on extraterritoriality.
Quite properly, the panel opinion also does not suggest that every portion of the Bankruptcy Code invariably applies to conduct abroad. Instead, it represents a sensitive recognition of the administrative exigencies that are bound up with the avoidance of this fraudulent transfer. I agree with this view, and I am happy to join in Judge Motz’s fine opinion.