**UNITED STATES of America,**

v.

**Edwin Gerardo Figuero SEPULVEDA, Defendant.**

**Case No. 1:13–CR–00310–GBL–1.**

United States District Court, E.D. Virginia, Alexandria Division.

Signed Nov. 6, 2014.

Michael Ben'Ary, Stacey K. Luck, U.S. Attorney's Office, Alexandria, VA, for United States of America.

### MEMORANDUM OPINION AND ORDER

GERALD BRUCE LEE, District Judge.

THIS MATTER is before the Court on Defendant's Motion to Dismiss for Violation of the Notice Requirement of the Fifth Amendment Due Process Clause ("Motion to Dismiss"). (Doc. 119.) This case arises from the murder of DEA Special Agent James Terry Watson in Bogota, Colombia on June 20, 2013. The issue before the Court is whether prosecuting the Defendant in the United States for the crimes charged violates the notice requirement of the Fifth Amendment's Due Process Clause. The Court DENIES Defendant's Motion to Dismiss because the charged crimes encompass extraterritorial jurisdiction over Defendant's conduct and his due process rights are not violated by subjecting him to prosecution in the United States under *United States v. Brehm*, 691 F.3d 547 (4th Cir.2012).

### I. BACKGROUND

On July 18, 2013, a federal grand jury returned an indictment charging six defendants with the murder of DEA Special Agent James Terry Watson. (Doc. 15 ¶ 1.) The murder allegedly occurred on June 20, 2013, in Bogota, Colombia in a taxi cab as part of a scheme to rob taxi riders. (Doc. 15 ¶ 17.) The indictment charged the six defendants, including Defendant Sepulveda, with: Count 1, murder of an internationally protected person and aiding and abetting that murder, in violation of 18 U.S.C. §§ 2, 1116(a), (c); Count 3, conspiracy to kidnap an internationally protected person, in violation of 18 U.S.C. § 1201(c); and Count 4, kidnapping an internationally protected person and aiding and abetting that kidnapping, in violation of 18 U.S.C. §§ 2, 1201. (Doc. 15.)

### II. DISCUSSION

The Court DENIES Defendant's Motion to Dismiss because the charged crimes encompass extraterritorial jurisdiction over Defendant's conduct and his due process rights are not violated by subjecting him to prosecution in the United States for

such crimes under *United States v. Brehm*, 691 F.3d 547 (4th Cir.2012).

First, as an initial matter, the Court finds that Congress intended for the charges of murder of an internationally protected person and kidnapping of an internationally protected person to be applied extraterritorially because the plain language of the statutes undeniably demonstrates such an intent. Congress expressly provided for extraterritorial application of jurisdiction in the statutes. *See* 18 U.S.C. § 1116(c) (explicitly grants extraterritorial jurisdiction over the murder of an internationally protected person "[i]f the victim . . . is an internationally protected person outside the United States. . . ."); § 1201(e) (explicitly states that "if the victim . . . is an internationally protected person outside the United States, the United States may exercise jurisdiction over the offense [kidnapping of an internationally protected person] if," among other things, "the victim is a representative, officer, employee, or agent of the United States. . . ."). The plain language of these statutes rebuts the presumption against extra-territoriality by codifying Congress' intent that extraterritorial jurisdiction be applied regardless of where the offenses occur. *See E.E.O.C. v. Arabian Am. Oil Co.*, 499 U.S. 244, 248, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991) ("It is a longstanding principle of American law that legislation of Congress, *unless a contrary intent appears*, is meant to apply only within the territorial jurisdiction of the United States." (emphasis added) (citations and internal quotation marks omitted)); *Reyes–Gaona v. N.C. Growers Ass'n*, 250 F.3d 861, 864 (4th Cir.2001) ("[T]he presumption against extra-territorial application of a federal statute can be overcome *only if there is an affirmative intention of the Congress clearly expressed.*" (emphasis added) (citations and internal quotation marks omitted)).

Second, the Court holds that Defendant's due process rights are not violated by prosecuting him in the United States for the murder and kidnapping of an internationally protected person because exercising extraterritorial jurisdiction for these offenses is proper under the Fourth Circuit's test set forth in *Brehm*. Defendant argues that the United States cannot meet the requirements of the sufficient nexus test, while the Government argues that the Fourth Circuit has not adopted the sufficient nexus test and has instead outlined factors for courts to consider in the *Brehm* case. Each contention is discussed in turn.

Defendant claims that the Fourth Circuit has adopted the sufficient nexus test to determine whether extraterritorial jurisdiction offends a defendant's right to due process. "To the extent the nexus requirement serves as a proxy for due process, it addresses the broader concern of ensuring that 'a United States court will assert jurisdiction only over a defendant who should reasonably anticipate being haled into court in this country.'" *United States v. Ali*, 718 F.3d 929, 944 (D.C.Cir. 2013) (quoting *United States v. Klimavicius–Viloria*, 144 F.3d 1249, 1257 (9th Cir. 1998)). The ultimate question for the Court is whether "application of the statute to the defendant [would] be arbitrary or fundamentally unfair." *United States v. Juda*, 46 F.3d 961, 967 (9th Cir.1995). Defendant cites to the Fourth Circuit's decision in *Mohammad–Omar* to describe the nexus requirement. In *Mohammad–Omar*, the court explained that:

> The Second and Ninth Circuits have held that, while Congress may clearly express its intent to reach extraterritorial conduct, a due process analysis must be undertaken to ensure the reach of Congress does not exceed its constitu-

tional grasp. To apply a federal criminal statute to a defendant extraterritorially without violating due process, there must be a sufficient nexus between the defendant and the United States, so that such application would not be arbitrary or fundamentally unfair.

*United States v. Mohammad–Omar,* 323 Fed.Appx. 259, 261 (4th Cir.2009) (unpublished) (citations and internal quotation marks omitted). In *Mohammad–Omar,* the court held that exercising jurisdiction over the defendant for his exterritorial conduct was proper.

> Omar similarly had ample reason to anticipate being haled into court in the United States on account of his drug trafficking activity in Afghanistan, Dubai, and Ghana. His partner, Nasrullah, knew the heroin he sold was destined for the United States. With regard to a planned 2007 transaction, Nasrullah personally met with an undercover agent he believed to be an American heroin distributor. Nasrullah affirmatively indicated that his partner, Omar, knew the full details and scope of the transaction. Because the evidence demonstrated that the drugs Omar conspired to transport were destined for the United States, jurisdiction over him was proper.

*Id.* at 262.

Similarly, the Ninth Circuit held that the sufficient nexus test was met when a British defendant and his boat were seized off the coast of California while he was attempting to smuggle marijuana into the United States. *United States v. Davis,* 905 F.2d 245 (9th Cir.1990). Conversely, the court held that the sufficient nexus test was not met when seven foreign defendants were convicted of drug trafficking crimes after they were observed on a Colombian vessel off the coast of Colombia assisting another ship that was making illegal drug runs between Colombia and Mexico. *United States v. Perlaza,* 439 F.3d 1149 (9th Cir.2006). Here, however, Defendant suggests that in addition to having a sufficient nexus, a defendant must also specifically target an American person, property, or interest to be subjected to extra-territorial jurisdiction. (Doc. 119 at 5.)

The parties also cite to *United States v. Brehm,* 691 F.3d 547 (4th Cir.2012), in their nexus analysis. In *Brehm,* a South African citizen was charged with assault in a United States federal court for stabbing a British citizen on Kandahar Airfield—a NATO-operated military base in Afghanistan. *Id.* at 549. Brehm was employed by a United States Department of Defense subcontractor. *Id.* Brehm argued that his due process rights were violated when he was charged in the United States. *Id.* at 550. Brehm contended that his fight was "a run-of-the-mill assault ... over a personal dispute in a foreign country." *Id.* at 551. Brehm suggested that prosecution in the United States was improper because he could not have foreseen being brought to the United States at the time of the alleged assault. *Id.* at 550–51.

The Fourth Circuit held that although the defendant did not intend to target or affect "American soil or American commerce," his actions nevertheless "affected significant American interests." *Id.* at 552–53. The significant American interests included the "preservation of law and order on the base, the maintenance of military-related discipline," and the reallocation of Department of Defense resources to confine the defendant and investigate the crime. *Id.* The court further reasoned that it did not find any inherent unfairness in the prosecution because the defendant committed the type of crime for which it was reasonable to expect he would be prosecuted "somewhere" for his clearly illegal conduct. *Id.* at 554 (citing *United*

*States v. Al Kassar,* 660 F.3d 108, 119 (2d Cir.2011) ("Fair warning does not require that the defendants understand that they could be subject to criminal prosecution *in the United States* so long as they would reasonably understand that their conduct was criminal and would subject them to prosecution somewhere." (emphasis in original))). Thus, according to *Brehm,* the application of extra territorial jurisdiction satisfies due process if the crime: (1) "affected significant American interests," and (2) would subject the defendants to prosecution "somewhere." *Brehm,* 691 F.3d at 552–54.

The Court finds that the test set forth in *Brehm,* as opposed to the framework set forth in *Mohammad–Omar,* is the appropriate test to analyze whether due process is offended by extraterritorial enforcement of a statute because *Brehm* is a published and more recent opinion, while *Mohammad–Omar* is an unpublished and less-recent opinion. *See Hentosh v. Old Dominion Univ.,* 767 F.3d 413, 417 (4th Cir. 2014) (unpublished opinions have no precedential value and "are entitled only to the weight they generate by the persuasiveness of their reasoning" (citation and internal quotation marks omitted)); *In re Naranjo,* 768 F.3d 332, 344 n. 15 (4th Cir.2014) (unpublished opinions have no precedential weight).

The Court holds that extraterritorial enforcement of the statutes implicated in this case does not violate the Fifth Amendment's Due Process clause as the *Brehm* test is satisfied. First, it is clear that the crime affected the significant American interest of protecting United States citizens who serve their country by working abroad in diplomatic capacities. The United States has a significant interest in the victim not only because he is a United States citizen, but also because of his role as an Assistant Attaché at the United

States Embassy in Colombia—the United States has an interest in protecting the safety of citizens who work abroad in diplomatic capacities. *See Boos v. Barry,* 485 U.S. 312, 323–24, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988) ("[W]e have a more parochial reason to protect foreign diplomats in this country. Doing so ensures that similar protections will be accorded those that we send abroad to represent the United States, and *thus serves our national interest in protecting our own citizens.*" (emphasis added)); *767 Third Ave. Assocs. v. Permanent Mission of the Republic of Zaire to United Nations,* 988 F.2d 295, 296 (2d Cir.1993) ("[B]y upsetting existing treaty relationships American diplomats abroad may well be denied *lawful protection of their lives and property to which they would otherwise be entitled.*" (emphasis added)). This is analogous to the United States' interests the Fourth Circuit found were affected in *Brehm. See* 691 F.3d at 552–53.

Both *Mohammad–Omar* and *Davis* are also instructive on this point. In both cases, the crime (drug trafficking) affected the significant American interest of preventing the trafficking of illicit drugs in this country. *See Nat'l Treasury Emps. Union v. Von Raab,* 489 U.S. 656, 668, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989) ("The Customs Service is our Nation's first line of defense against one of the greatest problems affecting the health and welfare of our population. We have adverted before to the veritable national crisis in law enforcement caused by smuggling of illicit narcotics." (citation and internal quotation marks omitted)); *Watty v. Sheriff of Clarendon Cnty.,* No. 4:10–cv–2056–MGL–TER, 2013 WL 529951, at *8 (D.S.C. Jan. 3, 2013) ("Finally, there is no question that the prevention of drug trafficking is an important government interest."); *see also Taylor v. Commonwealth,* 6 Va.App. 384, 411, 369 S.E.2d 423 (1988) (explaining that

there is an "overwhelming governmental interest in deterring and terminating the illicit drug trafficking in this country"). Also, similar to *Brehm,* the fact that the Defendant did not specifically target an American is immaterial as American interests were nevertheless affected. *See Brehm,* 691 F.3d at 552. Accordingly, because the victim in the underlying crime was an Assistant Attache at the United States Embassy in Colombia and the United States has an interest in protecting citizens who serve their country by working abroad in diplomatic capacities, the Court holds that the crimes here affected significant American interests.

Second, the Defendant had ample reason to anticipate being prosecuted for his conduct "somewhere." A defendant need not understand that he is subject to prosecution "in the United States so long as they would reasonably understand that *their conduct was criminal and would subject them to prosecution somewhere.*" *Id.* at 554 (emphasis added) (citation omitted). Here the Defendant allegedly kidnapped and murdered Special Agent Watson. (Doc. 15.) Defendant—similar to the defendant in *Mohammad–Omar*—had ample reason to anticipate being into a court for allegedly committing a criminal offense. The extradition treaty between the United States and Colombia specifically permits the extradition of Colombian nationals to the United States for prosecution for kidnapping and murder. *See* Extradition Treaty with the Republic of Colombia, U.S.-Colom., Sept. 14, 1979, S. TREATY DOC. No. 97–8 (1981).

Both the Ninth Circuit and the D.C. Circuit have construed treaties as providing notice that "certain generally condemned acts are subject to prosecution by any party to the treaty." *United States v. Ali,* 718 F.3d 929, 944 (D.C.Cir.2013) (citing *United States v. Shi,* 525 F.3d 709 (9th Cir.2008)) (holding that prosecution of defendant in the United States for hostage taking based on acts committed outside the United States did not violate due process). The Court similarly construes this extradition treaty as giving notice to Colombians and Americans that a person who murders or kidnaps another may be subject to prosecution in either the United States or Colombia, depending on the locality of the offense, and finds this Defendant certainly had ample reason to anticipate being prosecuted for his conduct "somewhere," particularly in the United States.

Defendant attempts to distinguish *Brehm* from the instant case by noting that in *Brehm,* the defendant had reasons to expect that he would be subject to jurisdiction in the United States. (*See* Doc. 119 at 7–8) ("[N]ot only did he sign an employment contract with an American company, acknowledging and accepting that he was subject to criminal jurisdiction here, but the very authority that allowed him to live and work at the airfield was an official Letter of Authorization from the United States Department of Defense. . . ."). Given the Fourth Circuit's holding that the defendant must only surmise that their criminal conduct will subject them to prosecution "somewhere," *see Brehm,* 691 F.3d at 554, such a distinction is unavailing.

Here, it is undeniable that Defendant reasonably understood that kidnapping and killing a person are criminal acts and would subject him to prosecution somewhere. Thus, the second *Brehm* element is met. There is nothing inherently unfair about prosecuting the Defendant in the United States. *See id.* at 553–54. Consequently, the Court holds that extraterritorial enforcement of the statutes implicated in this case does not offend Defendant's due process rights. Accordingly, Defen-

dant's Motion to Dismiss must be DE-NIED.

## III.  CONCLUSION

The Court DENIES Defendant's Motion to Dismiss because the charged crimes encompass extraterritorial jurisdiction over the Defendant's conduct and his due process rights are not violated by prosecuting him in the United States under *Brehm.* Accordingly, it is hereby

**ORDERED** that Defendant's Motion to Dismiss for Violation of the Notice Requirement of the 5th Amendment Due Process Clause (Doc. 119) is **DENIED.**

**IT IS SO ORDERED.**