**UNITED STATES of America,**

v.

**Wilson Daniel Peralta BOCACHICA, Defendant.**

**Case No. 1:13–cr–00310–GBL–7.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Signed Nov. 6, 2014.

Michael Ben'Ary, Stacey K. Luck, U.S. Attorney's Office, Alexandria, VA, for United States of America.

## MEMORANDUM OPINION AND ORDER

GERALD BRUCE LEE, District Judge.

THIS MATTER is before the Court on Defendant Wilson Bocachica's Motion to Dismiss Count VII of the Indictment as Unconstitutional as Applied ("Motion to Dismiss"). (Doc. 96.) This case arises from the murder of DEA Special Agent James Terry Watson in Bogota, Colombia on June 20, 2013. The issue before the Court is whether Count VII of the indictment—Obstruction of Official Proceeding—is unconstitutional as applied to this Defendant who allegedly destroyed evidence in a criminal case investigation of a diplomat's murder in Colombia. The Court DENIES Defendant's Motion to Dismiss because the charged crime encompasses extraterritorial jurisdiction over Defendant's alleged conduct in Colombia and his due process rights are not violated by prosecuting him in the United States under *United States v. Brehm,* 691 F.3d 547 (4th Cir.2012).

### I. BACKGROUND

On July 18, 2013, a federal grand jury returned an indictment charging six defendants with the murder of DEA Special Agent James Terry Watson. (Doc. 9 ¶ 1.) The murder allegedly occurred on June 20, 2013, in Bogota, Colombia in a taxi cab as part of a scheme to rob taxi riders. (Doc. 9 ¶ 17.) The indictment charged the six defendants with: Count 1, murder of an internationally protected person and aiding and abetting that murder, in violation of 18 U.S.C. §§ 2, 1116(a), (c); Count 3, conspiracy to kidnap an internationally protected person, in violation of 18 U.S.C. § 1201(c); and Count 4, kidnapping an internationally protected person and aiding and abetting that kidnapping, in violation of 18 U.S.C. §§ 2, 1201. (Doc. 9.) Defendant Wilson

Daniel Peralta–Bocachica was not charged in Counts 1, 3, and 4. He was charged with Count 7, obstruction of official proceeding ("obstruction of justice"), in violation of 18 U.S.C. § 1512(c). (*Id.*)

The Government alleges that Special Agent Watson was robbed and stabbed to death in the back seat of a taxi cab. (*Id.*) Agent Watson's murder was widely reported in Colombian media. (Doc. 158 at 9.) The Government further alleges that Defendant, knowing that his taxi contained evidence of the murder, cleaned and replaced the bloody back seat of his taxi in order to destroy evidence. (Doc. 154 at 3–4.)

## II. DISCUSSION

The Court DENIES Defendant's Motion to Dismiss because the charged crime encompasses extraterritorial jurisdiction over Defendant's conduct and his due process rights are not violated by prosecuting him in the United States under *United States v. Brehm*, 691 F.3d 547 (4th Cir.2012). Defendant's motion suggests that the Court must first determine whether Congress intended for a statute to be applied extraterritorially, and then determine whether Congress has the power to do so. (Doc. 97 at 3.) Defendant also suggests that the second step is inextricably intertwined with notice and due process, thereby requiring a due process analysis. (*Id.*)

■ First, the Court finds that Congress intended for the charge of obstruction of official proceedings to be applied extraterritorially because the plain language of the statute undeniably demonstrates such intent. Congress expressly provided for extraterritorial application of jurisdiction in the obstruction of justice statute. *See* 18 U.S.C. § 1512(c). Section 1512(h), which states that "[t]here is extraterritorial Federal jurisdiction over an offense under this section," clearly over-

comes the presumption against extra-territoriality by explicitly codifying Congress' intent that extraterritorial jurisdiction be applied regardless of where the offense occurs. *See E.E.O.C. v. Arabian Am. Oil Co.*, 499 U.S. 244, 248, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991) ("It is a longstanding principle of American law that legislation of Congress, *unless a contrary intent appears*, is meant to apply only within the territorial jurisdiction of the United States." (emphasis added) (citations and internal quotation marks omitted)); *Reyes–Gaona v. N.C. Growers Ass'n*, 250 F.3d 861, 864 (4th Cir.2001) ("[T]he presumption against extra-territorial application of a federal statute can be overcome *only if there is an affirmative intention of the Congress clearly expressed.*" (emphasis added) (citations and internal quotation marks omitted)).

■ Second, the Court holds that Defendant's due process rights are not violated by the Government prosecuting him in the United States for obstruction of justice because exercising extraterritorial jurisdiction for this offense is proper under the Fourth Circuit's test set forth in *Brehm*. Defendant argues that the United States cannot meet the requirements of the sufficient nexus test. In contrast, the Government argues that if the sufficient nexus test applies, there is a sufficient nexus between the Defendant and the United States such that applying the statute in question to the Defendant's extraterritorial conduct would not offend his due process rights. Each contention is discussed in turn.

"To the extent the nexus requirement serves as a proxy for due process, it addresses the broader concern of ensuring that 'a United States court will assert jurisdiction only over a defendant who should reasonably anticipate being haled

into court in this country.' " *United States v. Ali,* 718 F.3d 929, 944 (D.C.Cir.2013) (quoting *United States v. Klimavicius–Viloria,* 144 F.3d 1249, 1257 (9th Cir.1998)). The ultimate question for the Court is whether "application of the statute to the defendant [would] be arbitrary or fundamentally unfair." *United States v. Juda,* 46 F.3d 961, 967 (9th Cir.1995). Both parties cite the Fourth Circuit's decision in *Mohammad–Omar* to describe the nexus requirement. In *Mohammad–Omar* the court explained that:

> The Second and Ninth Circuits have held that, while Congress may clearly express its intent to reach extraterritorial conduct, a due process analysis must be undertaken to ensure the reach of Congress does not exceed its constitutional grasp. To apply a federal criminal statute to a defendant extraterritorially without violating due process, there must be a sufficient nexus between the defendant and the United States, so that such application would not be arbitrary or fundamentally unfair.

*United States v. Mohammad–Omar,* 323 Fed.Appx. 259, 261 (4th Cir.2009) (unpublished) (citations and internal quotation marks omitted). In *Mohammad–Omar,* the court held that exercising jurisdiction over the defendant for his extraterritorial conduct was proper.

> Omar similarly had ample reason to anticipate being haled into court in the United States on account of his drug trafficking activity in Afghanistan, Dubai, and Ghana. His partner, Nasrullah, knew the heroin he sold was destined for the United States. With regard to a planned 2007 transaction, Nasrullah personally met with an undercover agent he believed to be an American heroin distributor. Nasrullah affirmatively indicated that his partner, Omar, knew the full details and scope of the transaction.

Because the evidence demonstrated that the drugs Omar conspired to transport were destined for the United States, jurisdiction over him was proper.

*Id.* at 262.

Similarly, the Ninth Circuit held that the sufficient nexus test was met when a British defendant and his boat were seized off the coast of California while he was attempting to smuggle marijuana into the United States. *United States v. Davis,* 905 F.2d 245 (9th Cir.1990). Conversely, the court held that the sufficient nexus test was not met when seven foreign defendants were convicted of drug trafficking crimes after they were observed on a Colombian vessel off the coast of Colombia assisting another ship that was making illegal drug runs between Colombia and Mexico. *United States v. Perlaza,* 439 F.3d 1149 (9th Cir.2006). Defendant also suggests that in addition to having a sufficient nexus, extra-territorial jurisdiction is proper only if the defendant specifically targeted an American person, property, or interest. (Doc. 97 at 6.)

The parties also cite to *United States v. Brehm,* 691 F.3d 547 (4th Cir.2012), in their nexus analysis. In *Brehm,* a South African citizen was charged with assault in a United States federal court for stabbing a British citizen on Kandahar Airfield—a NATO-operated military base in Afghanistan. *Id.* at 549. Brehm was employed by a United States Department of Defense subcontractor. *Id.* Brehm argued that his due process rights were violated when he was charged in the United States. *Id.* at 550. Brehm contended that his fight was "a run-of-the-mill assault … over a personal dispute in a foreign country." *Id.* at 551. Brehm suggested that prosecution in the United States was improper because he could not have foreseen being brought to the United States at the time of the alleged assault. *Id.* at 550–51.

■ The Fourth Circuit held that although the defendant did not intend to target or affect "American soil or American commerce," his actions nevertheless "affected significant American interests." *Id.* at 552–53. The significant American interests included the "preservation of law and order on the base, the maintenance of military-related discipline," and the reallocation of Department of Defense resources to confine the defendant and investigate the crime. *Id.* The court further reasoned that it did not find any inherent unfairness in the prosecution because the defendant committed the type of crime for which it was reasonable to expect he would be prosecuted "somewhere" for his clearly illegal conduct. *Id.* at 554 (citing *United States v. Al Kassar*, 660 F.3d 108, 119 (2d Cir.2011) ("Fair warning does not require that the defendants understand that they could be subject to criminal prosecution *in the United States* so long as they would reasonably understand that their conduct was criminal and would subject them to prosecution somewhere." (emphasis in original))). Thus, according to *Brehm*, the application of extra territorial jurisdiction satisfies due process if the crime: (1) "affected significant American interests," and (2) would subject the defendants to prosecution "somewhere." *Brehm*, 691 F.3d at 552–54.

The Court finds that the test set forth in *Brehm*, as opposed to the framework set forth in *Mohammad–Omar*, is the appropriate test to analyze whether due process is offended by extraterritorial enforcement of a statute because *Brehm* is a published and more recent opinion, while *Mohammad–Omar* is an unpublished and less-recent opinion. *See Hentosh v. Old Dominion Univ.*, 767 F.3d 413, 417 (4th Cir. 2014) (unpublished opinions have no precedential value and "are entitled only to the weight they generate by the persuasiveness of their reasoning" (citation and internal quotation marks omitted)); *In re Naranjo*, 768 F.3d 332, 344 n. 15 (4th Cir.2014) (unpublished opinions have no precedential weight).

The Court holds that extraterritorial enforcement of the statute implicated in this case does not offend due process because the *Brehm* test is satisfied. First, it is clear that the crime affected the significant American interest of protecting United States citizens who serve their country by working abroad in diplomatic capacities. The United States has a significant interest in the victim not only because he is a United States citizen, but also because of his role as an Assistant Attaché at the United States Embassy in Colombia—the United States has an interest in protecting the safety of citizens who work abroad in diplomatic capacities. *See Boos v. Barry*, 485 U.S. 312, 323–24, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988) ("[W]e have a more parochial reason to protect foreign diplomats in this country. Doing so ensures that similar protections will be accorded those that we send abroad to represent the United States, and *thus serves our national interest in protecting our own citizens.*" (emphasis added)); *767 Third Ave. Assocs. v. Permanent Mission of the Republic of Zaire to United Nations*, 988 F.2d 295, 296 (2d Cir.1993) ("[B]y upsetting existing treaty relationships American diplomats abroad may well be denied *lawful protection of their lives and property to which they would otherwise be entitled.*" (emphasis added)). This is analogous to the United States' interests the Fourth Circuit found were affected in *Brehm*. *See* 691 F.3d at 552–53.

Both *Mohammad–Omar* and *Davis* are also instructive on this point. In both cases, the crime (drug trafficking) affected the significant American interest of preventing the trafficking of illicit drugs in this country. *See Nat'l Treasury Emps.*

*Union v. Von Raab,* 489 U.S. 656, 668, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989) ("The Customs Service is our Nation's first line of defense against one of the greatest problems affecting the health and welfare of our population. We have adverted before to the veritable national crisis in law enforcement caused by smuggling of illicit narcotics." (citation and internal quotation marks omitted)); *Watty v. Sheriff of Clarendon Cnty.,* No. 4:10–cv–2056–MGL–TER, 2013 WL 529951, at *8 (D.S.C. Jan. 3, 2013) ("Finally, there is no question that the prevention of drug trafficking is an important government interest."); *see also Taylor v. Commonwealth,* 6 Va.App. 384, 411, 369 S.E.2d 423 (1988) (explaining that there is an "overwhelming governmental interest in deterring and terminating the illicit drug trafficking in this country"). Also, similar to *Brehm,* the fact that the Defendant did not specifically target an American is immaterial as American interests were nevertheless affected. *See Brehm,* 691 F.3d at 552. Accordingly, because the victim in the underlying crime was an Assistant Attaché at the United States Embassy in Colombia and the United States has an interest in protecting citizens who serve their country by working abroad in diplomatic capacities, the Court holds that the crime here affected significant American interests.

Second, the Defendant had ample reason to anticipate being prosecuted for his conduct "somewhere." A defendant need not understand that he is. subject to prosecution "in the United States so long as they would reasonably understand that *their conduct was criminal and would subject them to prosecution somewhere." Id.* at 554 (emphasis added) (citation omitted). Defendant allegedly knew that the bloody back seat of his taxi contained evidence of the murder and he allegedly removed the bloody seat and replaced it to conceal the crime. (Doc. 153 at 9.) Defendant was also

allegedly aware that the victim was DEA Special Agent Watson due to widespread Colombian media coverage of the murder. (*Id.*) He also allegedly knew of the Colombian National Police's directive for the return of the car to their custody. (*Id.*) Given these facts, the Defendant—similar to the defendant in *Mohammad–Omar*—had ample reason to anticipate being haled into a court for allegedly committing a criminal offense. The extradition treaty between the United States and Colombia specifically permits the extradition of Colombian nationals to the United States for prosecution for the obstruction of justice. *See* Extradition Treaty with the Republic of Colombia, U.S.-Colom., Sept. 14, 1979, S. Treaty Doc. No. 97–8, at 10 (1981) (providing that "[o]ffenses against the laws relating to the administration of justice" are extraditable offenses).

Both the Ninth Circuit and the D.C. Circuit have construed treaties as providing notice that "certain generally condemned acts are subject to prosecution by any party to the treaty." *United States v. Ali,* 718 F.3d 929, 944 (D.C.Cir.2013) (citing *United States v. Shi,* 525 F.3d 709 (9th Cir.2008)) (holding that prosecution of defendant in the United States for hostage taking based on acts committed outside the United States did not violate due process). The Court similarly construes this extradition treaty as giving notice to Colombians and Americans that a person who obstructs justice may be subject to prosecution in either the United States or Colombia, depending on the locality of the offense, and finds this Defendant certainly had ample reason to anticipate being prosecuted for his conduct "somewhere," particularly in the United States.

Defendant is charged with obstruction of justice because he allegedly removed the bloody back seat of his taxi, which contained evidence of the murder of a DEA

agent who worked as an Assistant Attaché at the United States Embassy in Bogota, Colombia. These facts are more than sufficient to satisfy the test set forth in *Brehm*. There is nothing inherently unfair about prosecuting the Defendant in the United States. *See Brehm*, 691 F.3d at 553–54. Consequently, the Court holds that extraterritorial enforcement of the statute implicated in this case does not offend the Defendant's due process rights. Accordingly, Defendant's Motion to Dismiss must be DENIED.

## III. CONCLUSION

The Court DENIES Defendant's Motion to Dismiss because the charged crime encompasses extraterritorial jurisdiction over the Defendant's conduct in Colombia and his due process rights are not violated by prosecuting him in the United States. Accordingly, it is hereby

**ORDERED** that Defendant's Motion to Dismiss Count VII of the Indictment as Unconstitutional as Applied (Doc. 96) is **DENIED.**

**IT IS SO ORDERED.**